945 P.2d 1298

Frances McCLEAF, individually and as next of friend for Brandy McCleaf, a minor; Frances McCleaf, surviving parent of Ryan Patrick McCleaf, Plaintiffs–Appellants,

v.

STATE of Arizona; Benny McCabe and Jane Doe McCabe, husband and wife; Jerry Wallace and Jane Doe Wallace, husband and wife; Pedro Berumen and Jane Doe Berumen, husband and wife; and Josie Sanchez and John Doe Sanchez, husband and wife, Defendants–Appellees.

No. 1 CA–CV 94–0028.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 11, 1997.

As Amended Feb. 13, 1997.

Review Denied Nov. 12, 1997.*

---

* Chief Justice Zlaket and Justice Feldman voted to  grant the petition for review.

**168**

James J. Syme, Jr., Goodyear, for Plaintiffs–Appellants.

Grant Woods, Attorney General by John E. Birkemeier and Thomas J. Dennis, Assistant Attorneys General, Phoenix, for Defendants–Appellees.

## OPINION

THOMPSON, Presiding Judge.

A Yuma County probationer and felon, Josie Sanchez (Sanchez), got drunk and drove a car through a stop sign, causing a fatal collision. Frances McCleaf (plaintiff), mother of one child killed by Sanchez and of another injured, who was also physically injured herself, sued the state, alleging that its employees had been grossly negligent in their supervision of Sanchez. At the close of evidence, the court granted the state's motion for directed verdict. We affirm.

## FACTS AND PROCEDURAL HISTORY

■ Because the trial court granted a directed verdict for the state, we view the evidence in the light most favorable to plaintiff. *Goedecke v. Price*, 19 Ariz.App. 320, 322, 506 P.2d 1105, 1107 (1973).

In April 1987, Sanchez was charged with possession of illegal drugs and paraphernalia. She pleaded guilty to one count of possession of a dangerous drug, a class four felony. Her presentence report indicated that she was twenty-five years old, from a broken home, and the victim of physical and sexual abuse. At age thirteen, she began drinking, ran away from home, and attempted suicide. Sanchez stated that, in the year preceding her arrest, she and her husband consumed five cases of beer daily.

In the report, the probation officer recommended that Sanchez be sentenced to the presumptive four-year prison term. Yuma County Probation Officer and Unit Supervisor Paul Johnson screened the report and, after determining that Sanchez was a "high risk" probationer, recommended that she be placed on intensive probation. Subsequently, Judge B.L. Helm sentenced Sanchez to three years intensive probation.

The terms of probation included, among other provisions, that Sanchez obey all laws,

abstain from consumption of alcohol and drugs, obey her personal curfew schedule, and refrain from associating with criminals, probationers, parolees, and drug users. After serving two months in jail, Sanchez was placed on work release and required to attend Alcoholics Anonymous meetings for six months and to perform forty hours a week of community service.

On November 26, 1987, Sanchez violated curfew. The next day, she cashed her paycheck and used most of the money to buy alcohol. Sanchez violated probation again on December 14, 1987, by failing to report to her probation officer. On March 9, 1988, she again violated curfew. Although Sanchez had previously been required to take frequent random urinalysis tests, no random urinalysis tests were required between April 4, 1988 and September 7, 1988.

In August or September 1988, Benny McCabe, a newly hired probation officer, was assigned to Sanchez's case. McCabe had no prior experience as a probation officer short of a one-week training session. Although the state required every probation officer to have a bachelor's degree in social sciences, McCabe held management degrees only. The file McCabe received on Sanchez did not contain a case log or progress notes.

McCabe subsequently learned that Sanchez had told probation department personnel that she was "losing it." Considering this a cry for help, McCabe met with Sanchez to discuss her problems. After their meeting, Sanchez indicated that she was no longer feeling out of control.

On September 7, 1988, Sanchez accompanied another probationer, Hankins, to a potential heroin purchase. The two obtained no heroin, but proceeded to buy and consume a quantity of alcohol. Sanchez became inebriated and drove Hankins's jeep into a stucco fence. Police officers summoned to the scene of the accident administered field sobriety tests to Sanchez, noting that she was almost too intoxicated to stand. Sanchez became disorderly and uncooperative and had to be handcuffed and forced into a patrol car.

The results of Sanchez's subsequent intoxilyzer test indicated a blood alcohol content of more than twice the legal limit. Because Sanchez misled investigating officers as to her true identity, the officers did not learn that she was on intensive probation and released her after citing her for driving under the influence of alcohol (DUI).

Later that evening, Sanchez called her surveillance officer, Jerry Wallace, and admitted to the DUI citation. Wallace reported the incident to McCabe, who filed a petition to revoke Sanchez's probation. In the petition McCabe recommended that, rather than issuing an arrest warrant, the court issue a summons to require Sanchez's attendance at the revocation arraignment. Although it was Judge Helm's usual practice to arrest and confine persons charged with probation violations until final disposition of their petitions, he decided, based on McCabe's recommendation, not to issue an arrest warrant.

The initial appearance on the revocation petition was held on September 19, 1988. Through counsel, Sanchez denied the alleged violations. On September 29, however, Sanchez admitted to all the violations with the exception of one curfew infraction. Her disposition hearing was scheduled for October 19. She remained out of custody pending disposition, by Judge Helm's order.

In the early afternoon of October 14, 1988, Sanchez accompanied another fellow probationer to purchase alcohol. After a day of heavy drinking, Sanchez crashed the Cadillac she was driving into two cars parked at a bar. Soon thereafter, she disregarded a stop sign and collided with a small Chevrolet driven by plaintiff. The collision killed plaintiff's six-year-old son, Ryan, and injured plaintiff and plaintiff's ten-year-old daughter, Brandy.

Plaintiff brought this action against the state, claiming gross negligence in its supervision of Sanchez's probation and in its failure to take her into custody following her

probation violation.[1] The state moved to dismiss on the grounds of absolute immunity. The trial court denied the state's motion.

The state then answered plaintiff's complaint and the matter proceeded to trial. At the conclusion of the evidence, the trial court granted the state's motion for directed verdict, holding that there was insufficient evidence of gross negligence and insufficient evidence that any of the state's purported negligent acts were the proximate cause of the accident. The court denied plaintiff's motion for new trial and entered judgment in favor of the state. Plaintiff appeals both the judgment and the order denying the motion for new trial. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. (A.R.S.) § 12–2101(B) and (F)(1).

## DISCUSSION

■ Plaintiff acknowledges that she must prove gross negligence in order to recover. *See* A.R.S. § 12–820.02(A)(1) and (3). She alleges that, but for the state's gross negligence, Sanchez would have been in custody on October 14, and thus would not have killed her son and injured her and her daughter. Plaintiff concedes that she cannot hold the state liable for Judge Helm's decision not to have Sanchez arrested and held in custody pending the disposition of her revocation petition. *Evans v. Copins*, 26 Ariz.App. 96, 97, 546 P.2d 365, 366 (1976) (judges have immunity from civil liability for acts done in judicial capacity). Therefore, plaintiff bases her claim on the theory that the probation officers were grossly negligent in not having arrested Sanchez after her first DUI violation on September 7, in waiting eight days to file for probation revocation after the first DUI, and in recommending to Judge Helm that Sanchez's presence be assured by summons rather than by an arrest warrant.

Plaintiff also asserts that the probation officers negligently failed to supervise Sanchez's rehabilitation. She contends that the probation officers were grossly negligent in failing to require that Sanchez participate in rehabilitative programs, in discontinuing random drug testing, in maintaining an inadequate frequency of personal contacts with Sanchez, and in failing to keep an up-to-date, accurate file on her numerous probation violations.

Further, plaintiff alleges that the state was negligent in hiring McCabe and assigning the case to him because McCabe lacked the requisite social science background and had only one week of training as a probation officer.

## I. NEGLIGENT FAILURE TO REQUEST WARRANT/DELAY IN FILING PETITION TO REVOKE

■ In *Acevedo v. Pima County Adult Probation Dep't*, 142 Ariz. 319, 322, 690 P.2d 38, 41 (1984), the supreme court indicated that probation officers are afforded absolute immunity regarding some acts performed in connection with judicial proceedings. The court explained:

> Probation officers, in preparing and submitting presentence reports to the court, should be entitled to absolute immunity because the pre-sentence report is an integral part of the sentencing process. *We also believe that a probation officer is entitled to absolute protection from suit for actions which are necessary to carry out and enforce the conditions of probation imposed by the court.*

*Id.* (emphasis added, citation omitted). Actions undertaken by probation officers in connection with revocation proceedings should be protected because such proceedings enforce judicially-imposed conditions of probation. *See id.* However, the *holding* in *Acevedo* is that no probation officer immunity attaches to acts which contravene court directives, and this holding requires that we proceed cautiously in defining the scope of such immunity. *Id.* We recognize that making the inquiry, seemingly required by

---

1. Probation officers have the authority to arrest probationers. A.R.S. §§ 13–901(D), 13–916(D), and 12–253(3).

*Acevedo*, whether the actions of the probation officers here were pursuant to or in contravention of court directives, involves a degree of second-guessing that may vitiate the protections of any immunity we might recognize.

The determination to seek revocation of probation of an offender, or to refrain from doing so notwithstanding the offender's violation of probation, may be entitled to the same immunity that prosecutors enjoy as to the decision to initiate a prosecution, *see Challenge, Inc. v. State ex rel. Corbin*, 138 Ariz. 200, 204, 673 P.2d 944, 948 (App.1983), since both prosecutors and probation officers are empowered to commence revocation proceedings. Ariz.R.Crim.P. 27.5; *see also Nation v. Colla*, 173 Ariz. 245, 252, 841 P.2d 1370, 1377 (App.1992) (Child Protective Services caseworker entitled to absolute immunity in initiating and conducting dependency proceedings). The decision whether to seek to secure the presence of a probationer at revocation proceedings by recommending that the court issue an arrest warrant may likewise be an exercise of the sort of "quasiprosecutorial" or "quasijudicial" function that is entitled to immunity. *See id.* However, we need not decide such issues here because, under the facts of this case, these acts of gross negligence, if such they were, were not the cause of the harm.

Probation officers are obliged to obtain, assemble, and report to the court pertinent information regarding probationers' conduct. A.R.S. § 12–253(6). They are also called upon to bring offending probationers before the court. A.R.S. § 12–253(7). Our review of the record establishes that, by the time Judge Helm made the effectual release decision in this case, Sanchez had been brought into court on allegations of probation violation, and the judge had been provided the information reasonably necessary to make a responsible decision whether to jail Sanchez pending the revocation hearing. Whether the probation officers were dilatory in moving to revoke Sanchez's probation, whether they should have urged that a warrant issue, they clearly provided Judge Helm with the occasion and means to lock her up. The rest was up to him.

The trial court correctly determined that the failure of probation officers in this case to timely initiate revocation proceedings or to recommend the issuance of an arrest warrant did not make the state liable to plaintiff.

## II. NEGLIGENT FAILURE TO ARREST

█ Plaintiff argues that McCabe should have arrested Sanchez on the night of her first DUI violation. If McCabe had arrested her then, plaintiff asserts, Sanchez would have been ineligible for release under Ariz. R.Crim.P. 7.2(b). *See State v. Arnold*, 24 Ariz.App. 529, 540 P.2d 148 (1975) (probationer has no right to release on bail pending revocation proceedings unless reasonable grounds exist to show that the underlying conviction may be set aside). Then, so plaintiff argues, Sanchez would not have been out of custody to harm plaintiff and her children.

However, it was Judge Helm's decision, made first when the petition to revoke probation was filed and affirmed at the revocation arraignment and again after Sanchez admitted her probation violations, allowing her to remain out of custody pending disposition, that left Sanchez unconstrained to drive and reoffend as so tragically occurred here. Judge Helm's authority to incarcerate Sanchez upon the filing of the petition and thereafter during the pendency of the revocation proceedings was in no manner constrained by any probation officer's decision to forego arrest.[2] At the time Sanchez inflicted grievous harms on plaintiff and her children, she was free on Judge Helm's order. The trial court here properly concluded that the fail-

---

2. The directives of Rule 7.2(b) regarding release after conviction apply whether the defendant is in custody at the time of the release determination, as in *Arnold,* or is not in custody, as in *State v. Superior Court*, 138 Ariz. 4, 672 P.2d 956 (App.1983) (defendant, previously released on bail but rendered ineligible for release by reason of felony conviction, ordered into custody by court of appeals pursuant to Rule 7.2(b)).

ure of probation officers to arrest Sanchez did not proximately cause plaintiff's injuries. Judge Helm should have jailed Sanchez, but he cannot be held liable because he is immune.

Plaintiff's argument fails because, when responsibility for a determination of Sanchez's release status shifted to Judge Helm, the judicial decision not to incarcerate Sanchez became a superseding cause of the harms to plaintiff and precluded the assignment of liability to the probation officers. *See* Prosser & Keeton, TORTS § 44 (5th ed. 1984) (discussing superseding actions which negate proximate cause). Put another way, "where ... the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause." RESTATEMENT (SECOND) OF TORTS § 452(2).

■ The principle is exemplified in cases which provide useful analogies to the scenario before us. When a responsible actor assumes control of a situation from another (as in *Siggers v. Barlow*, 906 F.2d 241 (6th Cir.1990) (involving successive doctors caring for a patient and agreement that the second would take over)), or an ultimately authoritative decision-maker intervenes in a situation involving potential risk (*e.g., Peterson v. Martin*, 138 Minn. 195, 164 N.W. 813 (1917) (in which a parent allowed her child to keep explosive devices which negligent property owner defendants had left lying around); *see also Pittsburg Reduction Co. v. Horton*, 87 Ark. 576, 113 S.W. 647 (1908)), or such an ultimately authoritative decision-maker ratifies the decision preliminarily made by another, (*Connecticut Jr. Republic v. Doherty*, 20 Mass.App.Ct.107, 478 N.E.2d 735 (1985) (testator executes a will negligently drafted by lawyer)), the rule is that the negligence of the initial actor will not be found to be a proximate cause of harms that befall after the authoritative and effectual decision as to the same matter has been made by another person empowered to make it. Such is the

case before us. While a probation officer may arrest, such a decision is effectual for a brief period only, since the arrested probationer must be brought before a judge "without unreasonable delay" upon arrest. *Padilla v. Superior Court*, 133 Ariz. 488, 489–90, 652 P.2d 561, 562–63 (App.1982). At the initial appearance after arrest, the judge makes the release decision. *See id.* at 490, 652 P.2d at 563. The release decision which resulted in the harms to plaintiff and her family was clearly and effectually made by Judge Helm, and neither the probation officers nor their employer can be held liable for it.

### III. NEGLIGENT PROBATION SUPERVISION

■ Plaintiff asserts that the probation officers' supervision of Sanchez while she was on intensive probation was negligent, and that it was also negligent for the state to hire McCabe and assign Sanchez to McCabe's caseload. A directed verdict is properly granted when the plaintiff's evidence would require the jury to speculate on causation. *Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). In order to find that different supervisory measures would have prevented the fatal accident, the jury would have had to speculate that the alternative measures would have been successful. Plaintiff did not prove that other programs, or a different probation officer, would have kept Sanchez from reoffending. The trial court did not err in directing a verdict on this issue.

### CONCLUSION

The failure of probation officers to arrest Sanchez, to properly initiate revocation proceedings and request a warrant, or to provide different supervision over Sanchez's probation, did not proximately cause plaintiff's harm. The judgment and the order denying the motion for new trial are affirmed.

EHRLICH and KLEINSCHMIDT, JJ., concur.