143 P.3d 388 (2006)
Susan Adele HAMBLIN, surviving spouse of Russell Hamblin, deceased, Nicole Alyssa Hamblin and Kelly Marie Hamblin, her minor daughters, Plaintiffs/Appellants,
v.
STATE of Arizona; Maricopa County Adult Probation Department, Defendants/Appellees.
No. 1 CA-CV 05-0059.
Court of Appeals of Arizona, Division 1, Department B.
September 26, 2006.
*389 David G. Derickson, P.C. By David G. Derickson, Pamela Nicholson, Curtis Rau, Phoenix, Attorneys for Plaintiffs-Appellants.
Iafrate & Associates By Michele M. Iafrate, John Belanger, Phoenix, Attorneys for Defendants-Appellees.

OPINION
THOMPSON, Judge.
¶ 1 Appellants, the survivors of Russell Hamblin (the Hamblins), brought suit for his wrongful death against the State of Arizona and the Maricopa County Adult Probation Department (collectively MCAPD). The Hamblins appeal the summary judgment entered against them. Because we find that MCAPD was not the proximate cause of Russell Hamblin's death, we affirm.

FACTS AND RELEVANT PROCEEDINGS[1]
¶ 2 Russell Hamblin was shot and killed by Roy Salinas (Salinas) during an armed robbery committed by Salinas and two others. At the time of the murder, fifteen-year-old Salinas was on adult probation with MCAPD for having assaulted a corrections officer while detained by the Arizona Department of Juvenile Corrections. Salinas pled guilty to a reduced charge of attempted aggravated assault on a corrections officer, a class 6 offense, and was awaiting the start of his deferred jail term when he shot Russell Hamblin during a robbery.
¶ 3 The Hamblins alleged that MCAPD had a duty to supervise Salinas to ensure that he followed the terms of his probation, that MCAPD was grossly negligent when they failed to arrest Salinas or to seek a warrant for his arrest when Salinas violated his probationary terms, and that MCAPD's willful ignorance of Salinas's conduct allowed Salinas to murder Russell Hamblin.
¶ 4 The trial court initially dismissed the Hamblins' claims against MCAPD for failure to state a claim on grounds of immunity. On appeal from that decision this court reversed, holding that the alleged failure to supervise was not covered by immunity from civil liability, citing Acevedo v. Pima County Adult Probation Department, 142 Ariz. 319, 322, 690 P.2d 38, 41 (1984). We noted that there was an outstanding issue of causation urged below by MCAPD that the trial court had not ruled on. MCAPD argued that causation was lacking and that the Hamblins' claim required speculation that different supervision would have resulted in revocation of Salinas's probation, causing him to be incarcerated on the date that Russell Hamblin was killed. Our reversal of the dismissal *390 order left the Hamblins with the task of developing evidence to support all of the allegations of their complaint and to establish the elements of their claim, including the element of causation.
¶ 5 Following discovery, MCAPD moved for summary judgment on two grounds: an absence of evidence of gross negligence and the absence of non-speculative evidence of causation. The trial court granted MCAPD's motion for summary judgment for "two, separate and independent reasons." The trial court first found insufficient evidence of gross negligence to submit to the jury because, "[a]t every juncture, MCAPD made an `informed decision' . . . [and] did not `willfully ignore' the facts or engage in any inaction which a jury could find to be `gross negligence.'" Causation was the second ground for the trial court's ruling.
¶ 6 The Hamblins sought reconsideration of this ruling by way of a motion for new trial. The trial court entered judgment in favor of MCAPD and denied the Hamblins' motion for new trial. We have jurisdiction over the Hamblins' timely appeal pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(3) (2005) and 12-2101(B)(2005).

DISCUSSION
¶ 7 The Hamblins present two issues for our review:
1. Did the trial court err in failing to find a special relationship under Grimm v. Arizona Board of Pardons and Paroles, 115 Ariz. 260, 564 P.2d 1227 (1977); and
2. Did the trial court err in finding that the Hamblins showed insufficient evidence of causation?

A. Standard of Review
¶ 8 We review a grant of summary judgment de novo. Schwab v. Ames Constr., 207 Ariz. 56, 60, ¶ 17, 83 P.3d 56, 60 (App. 2004) (citation omitted). Summary judgment is appropriate when there are no genuine issues of material fact and when only one inference can be drawn from the undisputed facts. Orme School v. Reeves, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990).

B. Proximate Cause
¶ 9 It is well established that, in order to maintain a negligence action, a tort plaintiff must prove duty, breach of duty, causation and damages. See Ontiveros v. Borak, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983) (citations omitted). In this matter, our attention is drawn to the element of causation. Causation is an inquiry encompassing both cause in fact and proximate cause. Surely not every wrong committed by every criminal on probation can be laid at the financial doorstep of the government. The question, therefore, that must be addressed is whether the legal causation here is too attenuated to hold the state and the agency liable. We find that it is.
¶ 10 Causation is a two-part inquiry. Both elements, cause in fact and proximate cause, must be present for legal liability to attach. See Blue Shield of Virginia v. McCready, 457 U.S. 465, 478 nn. 12-13, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). The first element, cause in fact, involves a factual inquiry as to whether the actor's conduct in any way brought about the loss. See J.R. Norton Co. v. Fireman's Fund Ins. Co., 116 Ariz. 427, 430, 569 P.2d 857, 860 (App.1977). If any reasonable inference of causation is available, cause in fact must be decided by the trier of fact.[2]Id. Cause in fact is not the end of the inquiry, however. See Piper v. Bear Med. Sys., Inc., 180 Ariz. 170, 174, 883 P.2d 407, 411 (App.1993).
¶ 11 The second part of the causation inquiry is proximate cause. Our supreme court defines proximate cause as "that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." McDowell v. Davis, 104 Ariz. 69, 71, 448 P.2d 869, 871 (1968). That definition highlights the importance of the cause in fact element to proximate *391 cause. Without cause in fact, proximate cause will never be shown. Whether a defendant's conduct that in-fact caused harm is too attenuated from the consequential harm is a question of proximate cause for the court. J.R. Norton, 116 Ariz. at 430, 569 P.2d at 860; see also Fedie v. Travelodge Int'l, Inc., 162 Ariz. 263, 266, 782 P.2d 739, 742 (1989); W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 45, at 319-20 (5th ed.1984) ("the determination of facts upon which there could be no reasonable difference of opinion is in the hands of the court"). In Piper, this court said:
Proximate causation encompasses causation-in-fact and is generally a jury question. However, proximate cause is not merely a finding that there is a connection between defendant's conduct and the injury. It is a legal determination that certain conduct is significant or important enough that the defendant should be legally responsible.
180 Ariz. at 174, 883 P.2d at 411 (citing Gosewisch v. American Honda Motor Co., 153 Ariz. 400, 404, 737 P.2d 376, 380 (1987)); see Keeton, et al., supra ¶ 11, § 42, at 273; Douglas A. Blaze & Jefferson L. Lankford, The Law of Negligence in Arizona at § 4.02 (3rd ed.2005). When defendant's conduct is too attenuated or the nexus between the conduct and the harm too speculative, liability will not follow. See, e.g., Flowers v. K-Mart Corp., 126 Ariz. 495, 498-99, 616 P.2d 955, 958-59 (App.1980).
¶ 12 In general, proximate cause embodies "ideas of what justice demands, or of what is administratively possible and convenient." Keeton, et al., supra ¶ 11, § 41, at 264. Any examination of causation should recognize that "public policy undergirds concepts such as `proximate cause'." See U.S. v. LSL Biotechnologies, 379 F.3d 672, 693-94 (9th Cir.Ariz.2004) (quoting Blue Shield, 457 U.S. at 478 nn. 12-13, 102 S.Ct. 2540 (stating in a Clayton Act case that "remoteness" and "directness" are terms analogous to proximate cause in an antitrust case)). "[P]roximate causation is a matter of public policy and therefore subject to the changing attitudes and needs of society." See Keeton, et al., supra ¶ 11, § 39, at p. 244.
¶ 13 The Ninth Circuit in United States v. LSL Biotechnologies stated that:
there are two types of causation: causation in fact, otherwise known as "but for" causation; and legal causation, the public policy imperative of cutting off liability when a causal chain of events becomes excessively complex or attenuated. See, e.g., Prosser and Keeton on Torts §§ 42, at 272-73 (5th ed.1984).
379 F.3d at 693-94. Proximate cause is:
that combination of logic, common sense, justice, policy, and precedent that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery.
People Express Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246, 264, 495 A.2d 107 (1985) (citation and internal quotation omitted); see also Palsgraf v. Long Island R.R., 248 N.Y. 339, 162 N.E. 99, 103 (1928) (Andrews, J., dissenting).
¶ 14 That there are policy limits inherent in proximate cause is neither a new nor a particularly revolutionary notion. The Blue Shield Court cited the seminal 1928 tort case Palsgraf v. Long Island Railroad Company for the proposition that:
What we [] mean by the word `proximate' is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point.
Id. at 478, n. 13, 162 N.E. 99 (quoting Palsgraf, 162 N.E. at 103) (Andrews, J., dissenting)); see also Laborers' and Operating Engrs' Util. Agreement Health & Welfare v. Philip Morris, Inc., 42 F.Supp.2d 943, 946 n. 5 (D.Ariz.1999) (citing Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc., et al., 17 F.Supp.2d 1170, 1175 (D.Ore.1998) (Proximate cause embraces two distinct concepts: (1) forseeability; and (2) "a policy element that encompasses concepts of equity and standing.")); Kramer v. Raymond Corp., 840 F.Supp. 333, 335 (E.D.Pa.1993) ("Proximate cause" is not a logical proposition but a legal conclusion about when a party is to be held responsible for a loss); Blaze and Lankford, The Law of Negligence in Arizona, at § 4.02 (proximate *392 cause is a question of legal policy related directed at determining how far the protection of the law should extend); Leon Green, The Causal Relation Issue in Negligence Law, 60 Mich. L.Rev. 543, 548-49 (1960) ("The search for proximate cause . . . is designed to determine whether the defendant's conduct should be condemned and he be made to compensate for his victim's injury."); 65 C.J.S. Negligence § 193 (2006) ("legal causation . . . involves a question of whether liability should attach as a matter of law, even if proof establishes cause in fact . . . . [and] involves a determination that a nexus between a defendant's wrongful acts or omissions and injuries sustained is of such nature that it is socially and economically desirable to hold that defendant liable").
¶ 15 Arizona courts allow summary judgment against plaintiff crime victims who are unable to prove that their injuries were proximately caused by public entity defendants. For example, in Badia v. City of Casa Grande, this court found plaintiff's claim that police were grossly negligent in failing to hold an intoxicated person in violation of "accepted police custom and practice" too speculative to conclude that such failure resulted in her death. 195 Ariz. 349, 357, ¶ 29 988 P.2d 134, 142 (App.1999) (citations omitted). In Chavez v. Tolleson Elementary School District, this court stated that there was no evidence of a causal nexus between the school and the murder of a school girl. 122 Ariz. 472, 478, 595 P.2d 1017, 1023 (App. 1979). We explained:
[t]o say that murder is a foreseeable potential creating an unreasonable risk of harm to each child leaving school grounds each day in the state of Arizona is untenable. The heinous criminal conduct involved here, while shocking, is clearly in the category of the unforeseeable. If it were otherwise, prevision would become paranoia and the routines of daily life would be burdened by intolerable fear and inaction.
Id.
¶ 16 As a policy matter, it is untenable to hold probation officers liable for all crimes committed by a person on probation. This is true even if the officer knows that the defendant has committed technical violations of his probation. To hold otherwise would give hindsight too much play and derogate the social utility of a probation officer's judgment and discretion. Our legislature outlined the powers and duties of probation officers in A.R.S. § 12-253 (2005). Section 12-253(7) states that a probation officer has the power and duty to
[b]ring defaulting probationers into court when in his judgment the conduct of the probationer justifies the court to revoke suspension of the sentence.
The plain language of A.R.S. § 12-253(7) recognizes that not all probation violations warrant a change in status. The probation officer has a duty to bring probationers into court when "in his judgment" the violation would be likely to cause the court to alter the probationer's status.
¶ 17 MCAPD relied heavily on McCleaf v. State, 190 Ariz. 167, 945 P.2d 1298 (App.1997) in support of its request for summary judgment on causation. While we do not agree that the causal connection between negligent probation supervision and injury will always be speculative as a matter of law, we do see an analogy here to McCleaf. In McCleaf, tort liability was unavailable because there was a superseding event in that the trial judge made a judicial determination not to incarcerate the wrongdoer. Id. at 170, 945 P.2d at 1301.
¶ 18 This matter is not wholly different. Here the trial court sentenced Salinas to probation with full awareness of Salinas's prior and current crimes, including assaulting an officer. The probation department was charged with the task of attempting to help Salinas integrate into the community by securing employment, schooling and encouraging other law-abiding behaviors. Salinas violated his probation, to be sure; however, unlike McCleaf, his violations were relatively minor and technical. The conduct of the probationer, Sanchez, in McCleaf, in contrast, was portentous of the eventual resultant tragedy. Sanchez's alcohol abuse was implicated in her original offense and intensive probation supervision was imposed by the court with a condition of abstention from alcohol. Id. at 168-69, 945 P.2d at 1299-1300. *393 Her reoffense by repeatedly abusing alcohol was a disquieting indicator that she would again violate the law. Id. at 169, 945 P.2d at 1300. Sanchez did, of course, thereafter commit homicide while intoxicated. See id.
¶ 19 To assign liability to a probation officer for the failure to arrest Salinas and alter the status quo created by a trial judge, based on the violations seen here, would elevate hindsight to primacy and ignore the societal value implicated in investing probation officers with judgment and discretion. This we cannot do.

CONCLUSION
¶ 20 Because we find that MCAPD was not the proximate cause of Hamblin's death, we affirm.
CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge and JEFFERSON L. LANKFORD, Judge.
NOTES
[1] We view all facts and inferences in the light most favorable to the Hamblins, the parties against whom summary judgment was granted. See Andrews v. Blake, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).
[2] For purposes of this discussion, we assume without deciding that the Hamblins demonstrated that MCAPD had a duty to the public, breached that duty and that such a breach was a cause in fact of Russell Hamblin's death.