PERKINS, Judge:
*669 ¶1 Steven Gibson Jr. appeals from the superior court's orders dismissing his tort complaint for failure to state a claim pursuant to Arizona Rule of Civil Procedure ("Rule") 12(b)(6). In the course of a wrongful death suit brought against Gibson while he was a minor, the superior court appointed an attorney and a guardian ad litem ("GAL"), who was also an attorney, to defend Gibson's interests. The GAL contends he is entitled to absolute judicial immunity under Widoff v. Wiens , 202 Ariz. 383, 45 P.3d 1232 (App. 2002). Gibson's appointed attorney contends he too is protected by absolute judicial immunity as a court-appointed attorney. Because each acted in a representative rather than judicial capacity, we hold neither the GAL nor the appointed attorney is entitled to absolute judicial immunity. Gibson's appointed attorney additionally argues that because Gibson was represented by a GAL, he lacks standing to sue the appointed attorney. Because a minor represented by a GAL in adversarial proceedings is the real party in interest, we hold that minors have standing to sue their attorney for legal malpractice. Finally, drawing on the principles expressed in State v. Hicks , 219 Ariz. 328, 198 P.3d 1200 (2009), we hold that government entities may be held liable under a theory of negligent hiring when they authorize the appointment of a legal representative who lacks competence to handle the matter.
¶2 We affirm in part, reverse in part, and remand.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 We "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts," although we do not accept as true mere conclusory statements. Coleman v. City of Mesa , 230 Ariz. 352, 356, ¶ 9, 284 P.3d 863 (2012).
¶4 Claiming an extensive history of domestic violence, Steven Gibson Jr., along with his mother, sister, and a friend, planned and carried out the killing of Gibson's father in February and March of 2013. While criminal charges were pending, Gibson's paternal grandparents filed a civil complaint in probate court against Gibson, his mother, and his sister seeking damages for the alleged wrongful death of Gibson's father. Probate court Commissioner Fish appointed attorney Paul Theut to act as Gibson's GAL for the purposes of the wrongful death suit. Commissioner Fish subsequently appointed attorney Rick Kilfoy to act as Gibson's attorney in the wrongful death suit.
¶5 In February 2014, the probate court entered a default judgment against Gibson's co-defendants, his sister and mother, in the amount of $50,010,000.00. Gibson's grandparents subsequently served Gibson's representatives with a Rule 68 offer to take judgment against him in the amount of $5,000,000.00. Neither Theut nor Kilfoy ever informed Gibson about the fifty-million-dollar default judgment against his co-defendants or about the tendered five-million-dollar offer of judgment. On July 8, 2014, while the offer of judgment was still open, Gibson pled guilty to second degree murder in the death of his father.
¶6 After Gibson's guilty plea, Gibson's grandparents filed for summary judgment in their civil action. The probate court granted the motion for summary judgment and set a damages hearing. Theut and Kilfoy attended the damages hearing but failed to inform Gibson of the entry of summary judgment against him. At the damages hearing, Theut and Kilfoy did nothing to contest the claimed *670 damages and presented no evidence or argument to support mitigation. The probate court ultimately entered judgment against Gibson in the amount of $50,060,000.00. Subsequently, pursuant to Rule 68, the court awarded sanctions against Gibson in the amount of $1,142,465.21 for failure to obtain a more favorable judgment than the lapsed five-million-dollar offer of judgment.
¶7 Gibson then filed this negligence action alleging Kilfoy failed to properly defend against the summary judgment motion by filing deficient responses and failing to conduct discovery, including responses that were untimely or lacked citations to legal authority. Gibson further contends Theut and Kilfoy failed to inform him of the damages hearing or secure his presence at the hearing, all in violation of fiduciary duties owed to Gibson.
¶8 Specifically, Gibson alleges Theut and Kilfoy failed to properly defend the damages hearing by failing to make even minimal efforts to reduce the potential damages award and by failing to address or even advise Gibson concerning the offer of judgment before it lapsed. The complaint alleges that, to the contrary, these two professionals demonstrated more concern for opposing parties' emotional states than for protecting their own client's interests. For example, and not withstanding their client's stated motivation for the killing-to protect himself and his family members from further domestic violence-Theut and Kilfoy informed the court at the damages hearing that Gibson would not present evidence "in order to spare [Gibson's] grandparents from suffering more grief." According to the complaint, Theut and Kilfoy "justified" this decision on the basis that "the chances of [Gibson] ever having any money are slim" and "my client is-by the time he gets out of prison, he's going to spend most of his life there.... he'll ... never be able to pay" any award.
¶9 Theut and Kilfoy each appeared on a list maintained either by the County or the State (collectively "Government Defendants") of attorneys pre-qualified to serve as GALs and court-appointed attorneys. They each also had a contract with the County to provide GAL and attorney services. Gibson alleges the Government Defendants failed to ascertain Theut and Kilfoy's qualifications with regard to defending a wrongful death lawsuit before placing them on this list. Gibson further alleges the Government Defendants were negligent in hiring, retaining, and supervising Theut and Kilfoy with regard to the wrongful death litigation.
¶10 Theut, Kilfoy, the State, and the County filed motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Theut argued he was entitled to absolute judicial immunity because he was appointed as Gibson's GAL. Kilfoy, in turn, argued Theut, not Gibson, was his client and that Gibson did not have standing to sue Kilfoy for malpractice. Kilfoy additionally argued he was protected by absolute judicial immunity because he was acting as a court-appointed attorney. Finally, Kilfoy argued that Gibson's claims should be dismissed because Gibson was not entitled to counsel in a civil case and because Gibson could not prove a causal link between Kilfoy's conduct and Gibson's damages.
¶11 In its motion to dismiss, the State argued Gibson's claims were barred because Commissioner Fish was entitled to judicial immunity and the State could not be held directly or vicariously liable for Commissioner Fish's actions.
¶12 The County argued Gibson's claims should be dismissed because: (1) Gibson failed to comply with Arizona's notice of claim requirements codified in Arizona Revised Statutes ("A.R.S.") section 12-821.01 ; (2) under Arizona law the County cannot be liable for the conduct of appointed counsel because the County cannot supervise appointed counsel; and (3) the County is entitled to judicial immunity.
¶13 After a series of oral arguments on the various motions, the superior court dismissed Gibson's complaint as to all parties. Specifically, the court found that Theut, as GAL, and Kilfoy, as appointed counsel, were entitled to absolute judicial immunity and granted their separate motions to dismiss. The court next dismissed Gibson's claims against the State, finding that the direct liability claims were barred by absolute judicial immunity and the vicarious liability claims were barred because Theut and Kilfoy had previously been dismissed from the case. Finally, the court dismissed Gibson's claims against the County, relying on the reasoning the *671 court utilized in dismissing Gibson's claims against the State. The superior court further noted that although the notice of claim issue raised by the County had been sufficiently argued to preserve the issue, it declined to rule on that issue because it already had sufficient reason to dismiss the case. Gibson now appeals.
DISCUSSION
¶14 We review dismissal of a complaint for failure to state a claim de novo . Coleman , 230 Ariz. at 355, ¶ 7, 284 P.3d 863.
¶15 Here, we are confronted with the limits of judicial immunity as applied to third-parties appointed by the court and to government entities for their role in the appointment process. Gibson's former attorney, Kilfoy, and former GAL, Theut, contend they are protected by absolute judicial immunity for alleged negligence in their representation of Gibson while he was a minor. The Government Defendants also contend they are shielded by judicial immunity to the extent they had any role in Theut and Kilfoy's appointment. Because Theut and Kilfoy had different roles in Gibson's representation, we discuss each separately. In contrast, we discuss the disposition of the Government Defendants' immunity claims together, as their positions are similar.
I. Judicial Immunity in General
¶16 Judicial immunity protects judges and select court officials who perform functions intimately related or integral to the judicial process when acting in their official capacities. Acevedo by Acevedo v. Pima Cty. Adult Probation Dep't , 142 Ariz. 319, 321, 690 P.2d 38 (1984) ; see also Ashelman v. Pope , 793 F.2d 1072, 1075 (9th Cir. 1986). The express purpose of judicial immunity is to protect "principled and fearless decision-making" by the judiciary. Rankin v. Howard , 633 F.2d 844, 847 (9th Cir. 1980) (internal quotations omitted) (overruled on other grounds by Ashelman , 793 F.2d at 1078 ). "Simply stated, the rule is that judges of courts of general jurisdiction are not liable in a civil action for damages for their judicial acts, even when such acts are in excess of their jurisdiction or are alleged to have been done maliciously or corruptly." Acevedo , 142 Ariz. at 321, 690 P.2d 38.
¶17 Judicial immunity is not without limits. Id. It does not extend to every person who passes through the court house doors. Although Arizona courts have previously extended judicial immunity to probation officers, GALs, and psychiatrists, among others, these extensions are fact-specific and not absolute. See Acevedo , 142 Ariz. at 322, 690 P.2d 38 (extending judicial immunity to probation officers submitting presentence reports); Widoff , 202 Ariz. at 386, ¶ 11, 45 P.3d 1232 (extending judicial immunity to a GAL appointed to advise the court in a child custody proceeding); Lavit v. Super. Ct. , 173 Ariz. 96, 99, 839 P.2d 1141 (App. 1992) (extending judicial immunity to psychiatrists and psychologists who independently assist the court in making decisions). The extension of judicial immunity turns on the acts performed and not the identity of the actor. Lavit , 173 Ariz. at 99, 839 P.2d 1141 (explaining that "[i]n determining whether [judicial] immunity applies, the focus is on the nature of the function performed, not on the identity of the actor"); see also Acevedo , 142 Ariz. at 322, 690 P.2d 38 (extending judicial immunity to some acts by probation officers but not others). Ultimately, the applicability of judicial immunity does not depend on whether we have previously applied it to protect a particular class of actor. Rather, the question is whether we have immunized a court-related function. Acevedo , 142 Ariz. at 321, 690 P.2d 38.
II. Attorney Theut's Liability as Guardian ad Litem
¶18 Theut argues he is absolutely immune from suit because he was acting as Gibson's court-appointed GAL at all times relevant to the complaint. For the first time on appeal, Theut further argues the case should be dismissed because Gibson cannot show causation as a matter of law. We disagree on both counts.
¶19 Theut, relying on a broad reading of Widoff , argues that GALs are universally immune from suit in Arizona as a result of Widoff 's extension of judicial immunity. See Widoff , 202 Ariz. at 386, ¶ 11, 45 P.3d 1232. Contrary to Theut's assertions, Widoff is distinguishable. In Widoff , a mother involved in *672 a custody dispute filed suit against two GALs alleging they violated her civil rights in under 42 U.S.C. § 1983. Id . at 384, ¶¶ 1-2, 45 P.3d 1232. The trial court appointed the first GAL to visit each parent's home and interview each parent. Id. at 384-85, ¶ 3, 45 P.3d 1232. The first GAL then requested the assistance of a second GAL to complete the investigation. Id. Analogizing the role of the Widoff GALs to psychologists conducting court-ordered child custody evaluations, we held that the GALs in Widoff were protected by judicial immunity. Id. at 386, ¶¶ 10-11, 45 P.3d 1232. As we explained in Widoff , "because guardians ad litem are bound to determine the child's best interests in a custody proceeding, ultimately the child would suffer if such decisions were influenced by the threat of litigation. ... In this context, absolute immunity is necessary." Id. at 387, ¶ 12, 45 P.3d 1232.
¶20 Widoff extended judicial immunity to GALs acting on behalf of the court to further a court function. Id. at 384-85, ¶ 3, 45 P.3d 1232. Widoff did not address extending judicial immunity to GALs acting in another capacity. Here, it is undisputed that Theut was appointed to represent Gibson, at the time a minor, in the wrongful death action. Theut was not appointed to advise the court, but to overcome Gibson's legal incapacity, to advise Gibson, and otherwise defend the civil lawsuit against him. Thus, Widoff is inapposite.
¶21 Moreover, the policies expressed in Widoff and throughout Arizona's judicial immunity jurisprudence disfavor extending judicial immunity to Theut or similarly situated individuals. The concern we dealt with in Widoff was potential interference with the GAL's ability to function on behalf of the court and provide reliable third-party information. The core of that concern is the ability of the court to achieve the best interests of the child at issue. Id. at 387, ¶ 12, 45 P.3d 1232 (expressing concern that "the child would suffer if [GAL custody recommendations] were influenced by the threat of litigation"). In contrast, extending judicial immunity to Theut in this setting would actually operate to prejudice the minor as it would serve, in effect, as a license to negligently represent the minor's interests in an adversarial proceeding. We see no principled reason to extend Widoff in the manner Theut suggests.
¶22 Theut further argues that, as a GAL, he served an essential function of the court and is thus entitled to absolute judicial immunity as in Widoff and prior cases. Parties and their representatives, including those professionals appointed by the court, are not the beneficiaries of judicial immunity because participants in court proceedings are not per se an extension of the court. Rather, Theut's function was that of an active participant in the litigation, not as its arbiter, or as an advisor to the arbiter. He is therefore not entitled to judicial immunity. See Collins on Behalf of Collins v. Tabet , 111 N.M. 391, 806 P.2d 40, 50 (1991) (holding that where a GAL acts as an advocate for a child, rather than an adviser for the court, the reasons for extending immunity to GALs are lacking and the GAL should be accountable to the client).
¶23 Finally, Theut argues that, in any event, he cannot be liable because Gibson cannot show causation, having pled guilty to the criminal offenses underlying the civil suit that led to Theut's appointment. To support his claims, Theut cites to several cases upholding the entry of summary judgment in favor of defendants where the plaintiffs had failed to show causation. Theut did not raise this argument below nor does he explain how cases related to summary judgment apply to a dismissal under Rule 12(b)(6) where we must assume the truth of well-pled facts in the complaint. Cullen v. Auto-Owners Ins. Co. , 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344 (2008). Setting aside these issues, Theut was appointed prior to Gibson's guilty plea and allowed a favorable offer of judgment to lapse after a significantly higher default judgment had been entered against Gibson's co-defendants. Gibson has pled facts which, if true, would show that Theut's conduct led to the lapse of a favorable offer of judgment, the entry of a less favorable judgment, and award of significant attorneys' fees as a sanction. The difference, according to Gibson's complaint, was approximately $46 million dollars, or 90% of the final judgment against Gibson. Accordingly, Gibson's complaint alleges sufficient causation to survive Theut's Rule 12(b)(6) motion to dismiss.
*673 III. Attorney Kilfoy's Liability as Counsel
¶24 Kilfoy contends on appeal that Gibson's legal malpractice claims against him must be dismissed because: (1) only Theut, as Gibson's former GAL, and thus "the client," has standing to pursue those claims; (2) Gibson "cannot prove causation" because of his guilty plea in the related criminal case; and (3) because Kilfoy, as an appointed attorney, has absolute judicial immunity. Kilfoy's contentions are incorrect as a matter of law.
¶25 We first address Kilfoy's claim that he owed no duties to his client, Gibson, because Gibson was a minor and could only appear in litigation through a guardian or next friend. As a general matter, immunizing a minor's attorney from malpractice claims because of the minor's legal infirmity would serve to prejudice, rather than protect, the minor. Faced with a similar situation in Cook v. Connolly , the Supreme Court of Minnesota held that even though a minor must procedurally act through a guardian, it is the minor's interest, the minor's cause of action, and ultimately the minor's attorney-client relationship. 366 N.W.2d 287, 289-90 (Minn. 1985). Likewise, the Supreme Court of Kentucky has repeatedly held that an attorney procedurally representing a minor's next friend or guardian in litigation involving the minor's interests owes professional duties to the minor and may be liable to the minor for legal malpractice. Pete v. Anderson , 413 S.W.3d 291, 297, 299-300 (Ky. 2013) ; see also Branham v. Stewart , 307 S.W.3d 94, 97-101 (Ky. 2010).
¶26 We agree with the Minnesota and Kentucky courts: an attorney representing a minor in litigation is not shielded from legal malpractice suits by the procedural necessity of a GAL. To hold otherwise would functionally permit legal malpractice and frustrate the purpose of appointing attorneys to minors.
¶27 Kilfoy next argues Gibson cannot show causation. This argument is premature on appeal from a Rule 12(b)(6) dismissal. Rather than reject Kilfoy's contention outright, we construe his argument to be that Gibson failed to allege facts sufficient to state the causation element of his tort claims. Looking, as we must, to the allegations in Gibson's complaint, Gibson has alleged sufficient facts to establish causation. See Cullen , 218 Ariz. at 419, ¶ 7, 189 P.3d 344 (holding that we assume all well pled facts and reasonable inferences therefrom as true when reviewing a Rule 12(b)(6) dismissal). Gibson alleges in his complaint that, prior to pleading guilty in his criminal case, the plaintiffs in the underlying wrongful death suit made an offer of judgment for five million dollars, after securing a fifty-million-dollar default judgment against Gibson's co-defendants. He further alleges Theut and Kilfoy did not inform him of the offer of judgment or the default judgment against his co-defendants and improperly, without Gibson's knowledge or consent, rejected the offer of judgment. Gibson thereafter pled guilty to the criminal charges while Theut and Kilfoy allowed the offer of judgment to lapse.
¶28 On these allegations, after presentation of the evidence, a finder of fact could determine whether, had he been properly advised, Gibson would have accepted the offer of judgment and to what extent, if any, Gibson was damaged as a result. Failure to communicate a settlement offer is a sanctionable offense under Supreme Court Rule 42 ("Ethical Rule") 1.2(a) and Ethical Rule 1.4. See Matter of Varbel , 182 Ariz. 451, 453, 897 P.2d 1337 (1995) (noting that failure to advise a client of a settlement offer is a sanctionable offense).
¶29 Finally, relying primarily on Widoff 's purported extension of judicial immunity to GALs, Kilfoy contends that as a court-appointed attorney he is protected by absolute judicial immunity. Kilfoy relies on several arguments to assert his alleged entitlement to judicial immunity, including a right to Theut's purported immunity, public policy, and the contention that an advocate performs a function "related to the judicial process" and is therefore immune. These arguments regarding judicial immunity for court appointed counsel are incorrect as a matter of law.
¶30 Kilfoy was appointed to represent Gibson as his attorney. Kilfoy's function was not judicial under Acevedo , Lavit , or Widoff ; instead, Kilfoy represented and advocated for Gibson. No Arizona court has ever extended *674 judicial immunity to parties or their representatives and we decline to do so now. Kilfoy is similarly not entitled to vicarious immunity through Theut, as discussed supra . Accordingly, we reverse the superior court's dismissal of Gibson's complaint against Kilfoy.
IV. Claims Against the Government Defendants
¶31 Gibson alleges the Government Defendants are directly and vicariously liable for Theut and Kilfoy's alleged torts. Specifically, Gibson argues the Government Defendants are liable for negligent hiring, retention, and supervision of Theut and Kilfoy in addition to Gibson's vicarious liability claims. Gibson relies in part on Commissioner Fish's decision to appoint Theut and Kilfoy and in part on the Government Defendants' conduct in placing Theut and Kilfoy on a list of attorneys available for appointment.
¶32 Under Arizona law "[a] public entity shall not be liable for acts and omissions of its employees constituting ... [t]he exercise of a judicial ... function." A.R.S. § 12-820.01(A)(1). Thus, the Government Defendants have absolute immunity with respect to Commissioner Fish's appointment of Theut and Kilfoy. But this does not end the inquiry. Gibson additionally argues the Government Defendants are vicariously liable for Theut and Kilfoy's actions, which are explicitly not judicial functions, and argues neither Theut nor Kilfoy possessed the requisite skill and experience necessary to handle the underlying wrongful death case.
¶33 In State v. Hicks our supreme court held that a government entity cannot be held vicariously liable for a contract attorney's ineffective representation because the government has no right to supervise or direct a contract attorney's representation of his client. 219 Ariz. at 329, ¶ 1, 330, ¶ 12, 198 P.3d 1200. Accordingly, Gibson's vicarious liability claims against the Government Defendants are barred as a matter of law. Id. at 330, ¶ 12, 198 P.3d 1200 (holding that "[t]he State's duty ends once it has appointed competent counsel.").
¶34 Gibson's direct liability claim for negligent hiring, supported by his allegations that Theut and Kilfoy lacked the necessary skill and experience to represent him in a multi-million-dollar wrongful death lawsuit, is a much closer question. Our supreme court has held that the State has a duty to appoint competent counsel in criminal cases. Id. at 330, ¶ 11, 198 P.3d 1200 ; see also State v. Torres , 208 Ariz. 340, 342, ¶ 6, 93 P.3d 1056 (2004) ; Zarabia v. Bradshaw , 185 Ariz. 1, 3, 912 P.2d 5 (1996) ; State v. DeLuna , 110 Ariz. 497, 500-01, 520 P.2d 1121 (1974). In contrast to those cases, the underlying case in this matter is a civil dispute involving an incarcerated minor with no available legal guardian. There is some reason to believe Gibson's unique situation at the time of the wrongful death lawsuit necessitated the appointment of Theut and Kilfoy, even if Gibson was not entitled to counsel as a matter of due process. See Ariz. R. Civ. P. 17(f) ("The court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action."); see also Ariz. R. Probate P. 19(A) (authorizing the appointment of an attorney in probate matters). Regardless of whether Gibson was entitled to court-appointed representation in the wrongful death case, Commissioner Fish appointed Theut and Kilfoy in accordance with the Arizona Rules of Civil Procedure and Arizona Rules of Probate Procedure. Applying Hicks , once the decision was made to appoint a GAL and counsel, Gibson had the right to the appointment of competent representatives.
¶35 Gibson alleges the Government Defendants "appointed an attorney who lacked the skill and experience to provide competent representation to Plaintiff." Gibson further alleges the Government Defendants failed to ascertain Theut's skill and experience with respect to multi-million-dollar wrongful death lawsuits. In addition, Gibson alleges Theut and Kilfoy had contracts with the County "and were on a list of attorneys who were pre-qualified or pre-selected" to serve as a GAL or appointed attorney. As noted supra , general vicarious liability claims based on negligent supervision and appointment are barred by A.R.S. § 12-820.01(A)(1) and Hicks . However, Gibson has additionally alleged that Theut and Kilfoy were not sufficiently qualified to provide "adequate representation" from the outset because they *675 lacked the requisite skill and experience to defend Gibson's interests in the wrongful death case. See Hicks , 219 Ariz. at 329, ¶ 1, 330, ¶ 12, 198 P.3d 1200.
¶36 Whether or not Theut and Kilfoy were sufficiently skilled and experienced to represent Gibson in the wrongful death case is a fact question that is beyond the scope of a Rule 12(b)(6) motion. Nevertheless, we must address whether Gibson's allegations are sufficient to state a claim that the Government Defendants were negligent in including Theut and Kilfoy on a list of pre-qualified representatives. In Zarabia , our supreme court expressed concern that "even a very able probate and estate planning lawyer" would not "know when or on what issue to seek help and advice" in defending an indigent criminal defendant charged with a felony. 185 Ariz. at 3, 912 P.2d 5 (addressing an improper system whereby any licensed attorney in Yuma County could be appointed to represent virtually any indigent criminal defendant, regardless of skill or experience). Similarly, a skilled probate attorney would likely be unfamiliar with defending a complex tort case such as the underlying wrongful death action at issue here. Thus, Gibson's allegations that Theut and Kilfoy lacked the requisite experience to handle a complex civil case are sufficient to survive a Rule 12(b)(6) motion to dismiss.
¶37 It is unclear from Gibson's complaint whether the County, the State, or both, were responsible for "pre-qualif[ying]" or "pre-select[ing]" the attorneys on this list. It is likewise unclear as to what role, if any, a judicial officer played in approving the list. Accordingly, we reverse the superior court's dismissal of Gibson's negligent hiring claim against the County with respect to the County's role in selecting or qualifying allegedly incompetent representatives. Similarly, we reverse the superior court's ruling dismissing Gibson's negligent hiring claim against the State to the extent of its role in pre-approving Theut and Kilfoy for potential appointment. On remand, this issue may be renewed via summary judgment proceedings based on further information developed during discovery.
¶38 The County additionally claims Gibson's complaint should be dismissed for failure to comply with the notice of claim requirements in A.R.S. § 12-821.01. The superior court granted the County's motion to dismiss but expressly declined to rule on the notice of claim issue, holding "that the notice of claim issue has been sufficiently argued and preserved for the record but it is not necessary for the Court to rule on that issue." Because the superior court did not rule on the notice of claim issue, it is not properly before us. See A.R.S. § 12-2101(A) (setting forth appealable orders and rulings); see also Truck Ins. Exchange v. State Compensation Fund , 138 Ariz. 116, 118, 673 P.2d 314 (App. 1983) (describing the limits of our review). We observe, however, that the resolution of the notice of claim issue may be case-dispositive to the remaining alleged liability of the Government Defendants, and this issue is likewise remanded to the superior court for further consideration and resolution.
CONCLUSION
¶39 Based on the foregoing, we affirm in part, and reverse in part, the superior court's orders dismissing this case as to each appellee. The State and County are entitled to absolute judicial immunity under A.R.S. § 12-820.01(A)(1) against any claim by Gibson of direct or vicarious liability for Commissioner Fish's orders appointing Theut and Kilfoy. Furthermore, under Hicks , neither the State nor the County can be held vicariously liable for the misconduct of independently contracted attorneys. The State and County's direct liability, if any, is limited to each entity's conduct in pre-qualifying or selecting Theut and Kilfoy to serve as appointed counsel, to the extent Gibson can show Theut and Kilfoy were incompetent and unqualified, and therefore should not have been on the list provided to Commissioner Fish and other judicial officers.
¶40 Neither Theut nor Kilfoy are entitled to judicial immunity, as neither served a judicial function in this case. Further, Gibson's complaint alleges sufficient causation to survive a Rule 12(b)(6) motion to dismiss. Accordingly, we reverse the superior court's orders dismissing Gibson's claims against Theut and Kilfoy and remand this case to the superior court for further proceedings.
*676 ¶41 Finally, the County and Theut requested sanctions under Arizona Rule of Civil Appellate Procedure ("ARCAP") 25, arguing Gibson's appeal is frivolous. Because Gibson is the prevailing party, we decline to award sanctions. Further, Gibson is entitled to his taxable costs on appeal upon compliance with ARCAP 21.
THOMPSON, Judge, concurring in part, dissenting in part:
¶42 I agree with the majority opinion in all respects except as it would potentially allow liability to be imposed on Government Defendants for including Theut and Kilfoy on a list of contracted lawyers. The effectual and authoritative decision selecting these lawyers for Gibson's case was made by a court commissioner, who is immune. Even if the allegations of the complaint were proved, the Government Defendants did not proximately cause Gibson's injuries. See McCleaf v. State , 190 Ariz. 167, 945 P.2d 1298 (App. 1997) (stating the action by the effectual and authoritative decision-maker is a superseding cause as to prior preliminary decisions made by others).