973 A.2d 771

**PITTWAY CORPORATION, et al., and The Ryland Group, Inc.**

v.

**Stephon COLLINS, et al.**

**No. 128, Sept. Term, 2007.**

Court of Appeals of Maryland.

June 12, 2009.

Reconsideration Denied July 16, 2009.

222

Timothy L. Mullin, Jr. (Steven J. Kelly, Miles & Stockbridge, P.C., Baltimore; James H. Heller (Cozen O'Connor, Philadelphia, PA), on brief), Kevin F. Arthur (George E. Brown, Catherine M. Manofsky, Kramon & Graham, P.A., Baltimore), on brief, for Petitioners.

Patrick M. Regan (Catherine D. Bertram, Regan, Zambri & Long, PLLC, Washington, DC: Stewart A. Sutton, Law Office

of Stewart A. Sutton, LLC, Germantown; Clifford Sobin, Berman, Sobin & Gross, Gaithersburg), on brief, for Respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE (Retired, specially assigned), IRMA S. RAKER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

IRMA S. RAKER, Judge, Retired, specially assigned.

This tragic and sad case arose out of a house fire on June 14, 1998, at the residence of Michael Chapman and his wife, Carolyn Hill, located at 23 Grantchester Place, Gaithersburg, Maryland, a residence they rented from Mr. and Mrs. Gui–Fu Li. Samuel Juster and Stephon Collins, Jr., overnight guests of the Chapmans, died in the fire. Three Chapman children were seriously injured in the fire. The fire was caused by a burning candle in the basement, where the children were sleeping. The children lit the candle during an area-wide electrical outage caused by thunderstorms. The AC powered smoke detector, which did not have a back up battery system, was not activated by the smoke or fire.

The plaintiffs, Michael Chapman[1] and Carolyn Hill, along with Keith and Brandon Chapman, Dagmar and Stephon Collins, Sr., parents and personal representatives of the estate of Stephon Collins, Jr., and Daniel and Patricia Juster, parents and personal representatives of the estate of Samuel Juster filed suit in the Circuit Court for Montgomery County, Maryland.[2] Plaintiffs filed suit against Gui–Fu Li and Chung Ling Li, the landlords of the dwelling, Pittway Corporation, First Alert, Inc, Sunbeam Corporation, BRK Brands, Inc. and Honeywell International, Inc., the manufacturers of the smoke

---

1. Michael Chapman and his son, Keith, were both plaintiffs and defendants in this action.

2. Three separate complaints, which were later consolidated, were filed initially:

 Case No. 200122: The parents of Samuel Juster and Stephon Collins, Sr., the divorced father of Stephon Collins, Jr., filed suit for wrongful

detectors in the home,[3] the Ryland Group, Inc., the builder of the home, Summit Electric Co., the electrical subcontractor who procured the smoke detectors and installed them for Ryland, the City of Gaithersburg and the city rental inspector, Victor Greenblatt.[4] Plaintiffs also filed suit against David Dieffenbach and his employee Kevin Hightower, renovators of the basement in 1994, for failing to replace the smoke detectors with dual-power smoke detectors and for failing to warn the owners and occupants that the enclosed rooms in the basement could not be used for sleeping.

The question presented before this Court is whether intervening negligent acts superseded, as a matter of law, petitioners Pittway and Ryland's negligence in causing the fire that resulted in death and injury.

The procedural history of this case is long and complicated. In January 2002, the Circuit Court granted summary judg-

---

death and survival action as personal representatives of the decedent's estates against various defendants.

Case No. 200628: Dagmar Collins, the divorced mother of Stephon Collins, Jr., filed her own wrongful death cases against various defendants.

Case No. 202099: Michael Chapman and Carolyn Hill filed a personal injury action against various defendants arising out of the same June 14, 1998 fire.

Numerous complaints have been filed over the history of this litigation. For ease of reference, we shall refer to the "Re-filed Omnibus Amended Complaint," filed on October 21, 2004, as "the Complaint."

3. Pittway is the parent company of BRK Electronics, which designed, manufactured, distributed, sold, and warranted the smoke detectors used by Ryland in the construction of the house at issue. Other companies, as successors in interest, were also named in the Complaint including First Alert, Inc., Sunbeam Corporation, and Honeywell International, Inc. Sunbeam Corporation was dismissed due to its discharge in bankruptcy and is therefore no longer a party in this matter on appeal or otherwise. The Court of Special Appeals referred to the remaining parties collectively as the "manufacturer defendants," which we will do throughout this opinion.

4. The Circuit Court granted the City of Gaithersburg's Motion for Summary Judgment and the inspector's motion on the grounds that no private cause of action exists against a municipality when it fails to enforce its safety regulations.

ment in favor of Dieffenbach and Hightower.[5] The court also granted Ryland's Motion to Dismiss and Summit's Motion to Dismiss or in the Alternative, a Motion for Summary Judgment. Following the dismissal of Ryland and Summit, the plaintiffs voluntarily dismissed all claims against the remaining defendants and then filed an appeal against Ryland and Summit to the Court of Special Appeals. The intermediate appellate court vacated the order consenting to voluntary dismissal, dismissed the appeal as premature, and remanded the case to the Circuit Court for further proceedings. *Collins v. Li,* 158 Md.App. 252, 256, 857 A.2d 135, 137 (2004).[6] Plaintiffs then filed an amended complaint. Prior to a hearing in Circuit Court in February 2005 on a motion to dismiss the plaintiffs' Complaint, the Justers and Collinses settled their claims against the Lis and the Chapmans. At the hearing, the Circuit Court granted Ryland's motion to dismiss on the grounds that the events that transpired between Ryland's actions and the fire constituted unforeseeable intervening acts amounting to a superseding cause of the ultimate injuries. In June 2005, the Circuit Court granted the manufacturer defendants' motion to dismiss on the grounds that the numerous acts of the Lis and the Chapmans amounted to a superseding cause of the injuries alleged, thereby relieving them of liability. In April 2006, the Circuit Court granted the Lis' motion to dismiss on the grounds that the negligent acts of the Chapmans constituted superseding causes of the deadly fire.

The Court of Special Appeals held that the Circuit Court erred in dismissing the Complaint against the homebuilders

---

**5.** The Circuit Court granted Dieffenbach and Hightower's motion on the grounds that Dieffenbach and Hightower owed no legally cognizable duty to the plaintiffs and that Dieffenbach and Hightower's failure to obtain building permits was not a cause-in-fact or legal cause of the fire and resulting injuries.

**6.** The Court of Special Appeals' mandate is somewhat inconsistent in that the court purported to dismiss the entire appeal as premature but nonetheless went ahead, considered the parties' voluntary dismissal *in dicta,* and then acted upon the trial court's judgment of voluntary dismissal by ordering the parties' voluntary dismissal vacated.

and manufacturers of the smoke detector for failure to state a cause of action. *Collins v. Li,* 176 Md.App. 502, 933 A.2d 528 (2007). The intermediate appellate court concluded that the Circuit Court erred in determining whether the intervening acts of negligence constituted a superseding cause, relieving the manufacturer defendants, Summit Electric, Ryland Homes and Gui–Fu Li and Chung Ling Li of liability for the plaintiffs' deaths and injuries. The court affirmed the trial court's grant of Dieffenbach and Hightower's motions for summary judgment and held that the plaintiffs failed to establish that those defendants had a legally cognizable duty to the Collins, Juster and Chapman children. We shall affirm the judgment of the Court of Special Appeals.

This Court granted Ryland [7] and Pittway's petition for writ of certiorari, the only defendants to petition this Court, to consider the following questions:

"(1) Does the opinion of the Court of Special Appeals improperly change the Maryland law of superseding cause in ways that conflict with well-settled principles long applied by this Court?

(2) Does the opinion of the Court of Special Appeals improperly prevent trial courts from deciding the issue of superseding causation on a motion to dismiss?"

*Pittway v. Collins,* 403 Md. 304, 941 A.2d 1104 (2008).

## I. The Factual Background

The Court of Special Appeals set out the background facts succinctly. We quote from the opinion:

---

**7.** Ryland, in its petition for writ of certiorari, stated the question presented as follows:

"Did the Court of Special Appeals err in concluding that, on the basis of allegations in the Complaint, Ryland could have reasonably foreseen the many intervening acts of negligence and illegality that occurred between the sale of the house and the date of the fire? Did the Court of Special Appeals, therefore, incorrectly reverse the circuit court's dismissal of the Complaint against Ryland for failure to state a claim on the ground that, as a matter of law, Ryland did not proximately cause plaintiffs' injuries?"

We shall address the issues as framed by Pittway.

"Gui–Fu Li and Chung Ling Li purchased residential property located at 23 Grantchester Place in Gaithersburg, Maryland from the Ryland Group in 1989. Appellee Ryland Group was the builder of Grantchester Place and Summit was the electrical subcontractor. When the home was built in 1989, appellees Ryland and Summit installed an AC-power smoke detector that was hard wired into the home's electrical system, but that did not have a safety battery back-up on each level of the home. Gui–Fu Li, a chiropractor, renovated the basement for a medical office; these renovations, however, were performed without a building permit. When Dr. Li began to treat his acupuncture patients in the finished basement, neighbors complained to the City of Gaithersburg about his home medical office and he was cited for a zoning violation on June 6, 1989. After the Lis were denied permission for a zoning variance for a home medical office, they relocated their residence and, thereafter, sought to rent Grantchester Place.

Michael Chapman and the Lis signed a rental agreement on August 13, 1991 and the Lis applied for and obtained a Rental License from the City of Gaithersburg on August 29, 1991. The enclosed basement rooms had been used as bedrooms by the Chapman children and the sleep-over guests of their children since 1994. Mr. Chapman lived in the home with his wife, Catherine Chapman, and their children, including his three boys from his prior marriage, Keith, Brandon and Kyle Chapman.

Grantchester Place had a finished basement, which had three enclosed rooms: (a) Brandon and Kyle Chapman's bedroom, (b) Keith Chapman's bedroom, and (c) Mr. Chapman's computer room/office. The two basement bedrooms did not have any windows.

In early 1994, a water pipe burst in Grantchester Place, causing extensive damage, especially to the basement, where a foot of water had accumulated. On February 2, 1994, appellee, David E. Dieffenbach, trading as DEDHICO Home Improvements, submitted a written proposal to the Lis and Mr. Chapman to repair the water damage for a

total of $28,060. The contract itself indicates that '[t]he existing metal stud framing will be replaced and repaired to facilitate replacement of the walls.' Dieffenbach did not apply for and thus never obtained a building permit.

Dieffenbach subsequently submitted two invoices for extra work, which both showed that twenty electrical outlets in the basement were cleaned and re-wired by an electrician at $17.50 per outlet for a total cost of $350. Kevin Hightower, who is a journeyman electrician and an employee of Dieffenbach, performed the electrical re-wiring work.

Hightower admitted that he installed two or three new electrical outlets in the basement. Neither Dieffenbach nor Hightower obtained a permit for the electrical work performed from the City of Gaithersburg and they conceded that they were required by law to apply for an electrical permit. As a result of appellees' failure to apply for a building and/or electrical permit, the City of Gaithersburg did not inspect the work performed by appellees Dieffenbach and Hightower.

Neither the Lis, Dieffenbach or Hightower undertook to upgrade the basement's AC-power smoke detector to dual-power smoke detector in conjunction with the renovation project or to recommend an upgrade or to warn the owners or occupants of the limitations of the AC-power smoke detector.

On Saturday, June 13, 1998, thirteen-year-old, Stephon Collins, Jr. and twelve-year-old Samuel Juster were overnight guests of Keith, Brandon and twelve-year-old Kyle, the three sons of Michael Chapman and Carolyn Hill Chapman, at Grantchester Place. That evening, powerful thunderstorms caused an area-wide electrical power outage. In order to provide lighting so that Brandon, Kyle and Keith, and their friends, Samuel and Stephon could continue playing their game of Monopoly, they lit approximately six candles in the basement bedroom where Kyle and Brandon slept.

Keith Chapman, then seventeen years old, was the last of the boys to retire. He extinguished all but one of the

candles at approximately 4:30 a.m. and removed the one remaining lit candle from Kyle's and Brandon's bedroom, leaving it on a triangular corner unit in the basement's main recreational room. Keith Chapman estimated that he went to bed at approximately 4:45 a.m.

Some time around 5:00 a.m., Sunday, June 14, 1998, the candle that was left burning on the triangular corner unit in the basement's main recreational room ignited a fire. Both the Fire Investigation Report of the Bureau of Alcohol, Tobacco and Fire Arms and the Event Report of the Montgomery County Police Department concluded that the fire was ignited by the candle left on the triangular corner unit. As noted, the smoke detector located in the basement did not trigger an alarm due to the lack of a back-up power source. Stephon Collins, Jr. and Samuel Juster perished as a result of the fire; Kyle Chapman suffered severe burns requiring the amputation of both legs and the minor Chapman children suffered burns and injuries to their respiratory systems."

*Collins,* 176 Md.App. at 518–20, 933 A.2d at 537–38.

## II. Trial Court Proceedings

### A. The Complaint

The Complaint filed in the Circuit Court contained twenty-six counts, each alleging acts of omissions in relation to the smoke detectors and lack of emergency egress from the basement at the Grantchester Place residence. The plaintiffs alleged that all of the defendants, by either acts or omissions, were responsible for the lack of adequate warning to the children of the fire, which plaintiffs alleged, resulted from the lack of a battery backup in the smoke detector, or other alternative safety power source in the event of an electrical outage. The theory against the Lis was that the deaths and injuries were proximately caused by their acts and omissions resulting in the illegal use of the basement as bedrooms. The Complaint states that had the Lis not performed the unauthorized renovation of the basement for use as a medical office, it

"would have remained an empty concrete shell without even electrical outlets [under which] inhospitable conditions, the children would not have used the Chapman's basement as a sleeping area on June 14, 1998...." The Complaint also alleged that had the Lis "warned their tenants, plaintiffs' children would not have been sleeping in the enclosed basement bedrooms...."

Plaintiffs' theory against the manufacturer defendants, as set out in the Complaint, alleged negligence, strict liability/design defect and failure to warn of the limitations of the AC-powered only smoke detector, breach of implied warranty, and breach of express warranty, all stemming from the lack of a battery back-up smoke detector system. Plaintiffs alleged that, as a direct and proximate result of the failure to equip the detector at issue with a battery back-up or other alternative safety power source, the fire and smoke could not be detected, and thus no alert sounded to the children who did not have a reasonable opportunity to and could not escape the burning residence. The Court of Special Appeals provided the following chart outlining the claims against the manufacturer defendants:

| CAUSE OF ACTION | TORTIOUS CONDUCT |
| --- | --- |
| ¶¶ 47-56: Strict Liability/Design Defect and Failure to Warn | Asserting that the lack of a battery back-up constituted a defect, this Count alleges strict liability against the manufacturer defendants for placing in the stream of commerce a defective product and for failing to warn of its limitations, *i.e.*, that it would not operate during an electrical shortage or a power outage. |
| ¶¶ 57 and 60: Negligence, Wrongful Death | The manufacturer defendants breached duty of care with regard to the design and supervision of the manufacture and distribution of the product without battery back-up, by failing to provide consumer with adequate warnings concerning the know limitation and by failing to modify the design or notice of similar incidents. |
| ¶¶ 63-67: Breach of Implied Warranty; Annotated Code of Maryland, Commercial Law Article, §§ 2-314, 2-315 and 2-318 | The manufacturer defendants breached the implied warranty of merchantability and fitness for particular purpose in warranting to the public that their product was fit for the intended purpose of the early detection and alert of smoke and/or fires. |
| ¶¶ 68-71: Breach of Express Warranty | The manufacturer defendants, through their marketing, advertisements, warranties, sales literature, owners manuals, and other representations breached their express warranty that their product would provide an advance warning of smoke and/or fires. |

| | |
|---|---|
| ¶¶ 72-74: Survival Action as to Collins and Juster appellants | All of the causes of action against the manufacturer defendants were incorporated by reference in this Count. |

As to Ryland and Summit, plaintiffs alleged in the Complaint negligence, strict liability/failure to warn, wrongful death, survival actions and vicarious liability. The Court of Special Appeals provided the following chart outlining the claims against Ryland and Summit:

| CAUSE OF ACTION | TORTIOUS CONDUCT |
|---|---|
| ¶¶ 75-94: Negligence, Wrongful Death Strict Liability/Failure to Warn and Survival Actions Against Summit Electric | Summit Electric, as the electrical contractor for Ryland Homes, is alleged to have selected the particular model, that was defective in design, at the time it left Summit's control, and participated in the selling, placing it into the stream of commerce and installed it into the residence, failing to advise, instruct, and/or warn of the limitations of the smoke/fire detector [and] by failing to include and/or convey any information, warning or labeling regarding their lack of a battery back-up or alternative safety power source. Summit failed to provide the Lis, as the original purchasers of the home, the instructional materials and/or packaging and, having failed to deliver materials which warned that the detector would not function during a power outage, neither the Lis or the Chapmans knew of its limitations and the Chapmans, as a result, permitted their children to use candles during the power outage. |
| ¶¶ 95-120: Negligence, Wrongful Death, Strict Liability, Failure to Warn, Survival Action and Vicarious Liability against Ryland Homes | Ryland Homes, in its capacity as the builder for whom Summit Electric was employed, is likewise alleged to have participated in the selling and placing into the stream of commerce a defective product and failing to warn of limitations of smoke detector. Ryland Homes, like Summit, is alleged to have failed to deliver materials which would have warned the Lis and the Chapmans that the detector would not function during a power outage. Vicarious liability is alleged against the Ryland Group, in ¶¶ 95-120, for any negligence that may have been committed by Summit Electric. |

## B. The Circuit Court Rulings

The Circuit Court granted the motions to dismiss filed by the manufacturer defendants, Ryland, Summit and the Lis, ruling that as a matter of law, the enumerated and different substantial intervening acts of negligence constituted a superseding cause of the injuries. The court determined that the intervening acts interrupted the chain of causation, thereby relieving the manufacturer defendants, Summit, Ryland and the Lis of legal liability. Before the Circuit Court, for the purposes of the Motion to Dismiss, the manufacturer defen-

dants, Ryland and Summit challenged only the legal causation element of the plaintiffs' claim, and did not dispute that their actions constituted a cause-in-fact of plaintiffs' injuries.[8] As a result, the Circuit Court addressed only the issue of proximate cause. As to the manufacturer defendants, the Circuit Court ruled as follows:

> "As a matter of law, it was not foreseeable when the smoke detectors were manufactured in 1989 that so many different substantial intervening acts of negligence, including violations of law, would occur so as to link the 'Manufacturer Defendants' alleged negligent act to the Plaintiffs' injuries nine years later. Those intervening acts constitute a superseding cause of the Plaintiffs' injuries."

As to Ryland and Summit, the Circuit Court ruled that the Complaint did not establish legal causation, reasoning that it was inconceivable that they could foresee, nine years before the fire, that the Lis would finish the basement without providing emergency egress, in violation of building codes and that the Chapmans would allow the boys to keep candles lit while they were sleeping.

---

**8.** Ryland and the manufacturer defendants throughout this case have maintained that for the purposes of the motion to dismiss, they did not and do not contest whether their negligent acts and omissions were a cause-in-fact of plaintiffs injuries. Ryland stated as follows in its memorandum of law supporting its motion to dismiss: "This motion concerns the second component—legal causation." In an adjoining footnote, Ryland explained that it does not concede that its alleged conduct constituted a cause-in-fact of the plaintiffs' injuries. "To the contrary, Ryland believes that the injuries occurred not because of the absence of a functioning smoke detector, but rather because the children were sleeping in an illegally enclosed, windowless basement bedroom...." Pittway included a similar statement in its memorandum of law in support of its motion to dismiss. In its brief before the Court, Pittway states as follows: "The Manufacturer Appellants in no way concede the subject smoke alarms were either defective or that the alarms in fact caused the plaintiffs' injuries. However, the Manufacturer Appellants recognize that the circuit court decision below properly assumed the truth of those allegations for the purposes of the motion to dismiss, and cause-in-fact is again assumed for the purposes of the appeal."

The court also granted Dieffenbach and Hightower's motion for summary judgment, determining that "as home-improvement contractors repairing water damage to the basement of the residence in 1994, [Dieffenbach and Hightower] did not have a legally cognizable duty on which to impose liability for damages and injuries sustained in [the] June 1998 fire, to warn the occupants that the basement rooms should not be used for sleeping." The court also ruled that the failure to obtain building or electrical permits from the City of Gaithersburg in 1994, prior to repairing water damage to the basement was neither a cause-in-fact nor a legal cause of the fire.[9]

The Collins, Juster and Chapman plaintiffs noted a timely appeal to the Court of Special Appeals. The Court of Special Appeals reversed the judgment of the Circuit Court and remanded the case for further proceedings.

### III. The Court of Special Appeals Decision

The issue before the Court of Special Appeals was "whether the negligence of the Chapmans, in failing to ensure that the candle was extinguished, and the Lis, in allowing the enclosed basement rooms to be used for bedrooms, among other causes, operated to attenuate the legal responsibility of the manufacturer defendants, Ryland and Summit for the injuries and deaths." *Collins*, 176 Md.App. at 533, 933 A.2d at 546. Before that court, Ryland and Summit maintained that the ultimate harm was caused by the negligent acts of the Lis rather than the failure of the smoke detector to alert the children or by any lack of knowledge that the smoke detector was not equipped with an alternate power source. The manufacturer defendants asserted that the injuries and fatalities occurred not because of any defect in the design of the smoke alarm, but because the children were sleeping in an illegally enclosed, windowless basement bedroom which lacked ade-

---

9. The Circuit Court noted that the smoke detectors were in working order before and after the basement repair work was performed in 1994, and at that time, the Gaithersburg Building Code did not require dual power smoke detectors to be installed in connection with repair projects.

quate emergency egress facilities. The plaintiffs argued before the Court of Special Appeals that the issue of whether intervening acts of negligence are foreseeable is one of fact and therefore may not be properly resolved on a motion to dismiss or a motion for summary judgment. The Court of Special Appeals held that the Circuit Court could not properly determine, based solely on the allegations in the Complaint, whether the allegations of the negligent acts of the Chapmans and others could have been foreseen by the manufacturer defendants, Ryland and Summit. *Id.* at 518, 933 A.2d at 537.

Before addressing the issues before the court, the Court of Special Appeals set forth the standard of review as to a motion to dismiss. *Id.* at 534, 933 A.2d at 547. The court was crystal clear in its understanding of the proper approach: that in reviewing the grant of a motion to dismiss, the court must determine whether the Complaint, *on its face,* discloses a legally sufficient cause of action. In doing so, the court presumed the truth of all well-pleaded facts in the Complaint, along with any reasonable inferences derived therefrom in a light most favorable to the plaintiffs. *Id.*

The Court of Special Appeals then addressed the propriety of deciding foreseeability on a motion to dismiss, and concluded that while foreseeability is ordinarily a question of fact, to be decided by the trier of fact, there are those cases where the resolution of the issue becomes one of law. *Id.* at 537, 933 A.2d at 548. The court framed the inquiry as follows: "[W]e may only affirm the circuit court's determination of foreseeability if we are convinced that the facts of this case are susceptible of but one inference and that they gravitate so close to the polar extreme that the issue of causation is rendered a matter of law." *Id.* at 538, 933 A.2d at 549. The intermediate appellate court held that although the Circuit Court's analysis was a proper adjudication of the issues as framed by the parties, the court erred because the analysis was of facts not susceptible of but one inference. *Id.* at 545, 933 A.2d at 553. The court stated as follows:

"We are satisfied that the circuit court engaged in the proper analysis, employing the applicable legal principles in

a determination of what constitutes a superseding cause. Because we are not convinced that the facts of this case are susceptible of but one inference, however, we hold that the circuit court erred in not first determining whether there existed material facts not discernible from the Re–Filed Omnibus Amended Complaint. In other words, the court's analysis, although proper as to the facts it had available to it, was premature."

*Id.* at 547–48, 933 A.2d at 554.

### A. The Manufacturer Defendants

■ The heart of the Court of Special Appeals' opinion, expressed as multiple holdings, *see id.* at 534, 538, 545, 547, 552, 933 A.2d at 546, 549, 553, 554, 557, is "that the facts determinative of whether the negligent acts of the manufacturer defendants ... are substantial factors in causing the deaths and injuries and, hence, that such injuries and deaths were foreseeable are susceptible of more than one inference." *Id.* at 552, 933 A.2d at 557. The court found that "[t]hese facts are not so close to the polar extreme that the issue of causation is rendered a matter of law." *Id.* On this basis, with examples cited to support its reasoning,[10] the Court of Special Appeals reversed the Circuit Court's grant of the manufacturer defendants' motion to dismiss, making clear that the court was not addressing a resolution of the merits of the issue, but rather ruling that the issue was more appropriately decided on a motion for summary judgment or after trial. *Id.* at 551, 933 A.2d at 557.

---

**10.** The Court of Special Appeals referred to the fact that Keith Chapman had extinguished the candles which caused the fire, then relit them after Samuel Juster indicated that he was afraid of the dark. *Id.* at 551, 933 A.2d at 556–57. The court also referred to deposition testimony which described the time period after the boys awakened to the basement fire, indicating that there was a substantial period of time during which they attempted to escape. *Id.* 176 Md.App. at 549, 933 A.2d at 555.

Petitioners complain, on appeal, that the Court of Special Appeals took improper notice of extraneous materials not properly considered on a motion to dismiss. As we explain, *infra*, we agree with petitioners. Deposition testimony is not properly considered on a motion to dismiss.

The Court of Special Appeals reversed the judgment of the Circuit Court in dismissing Counts III and IV of the Complaint alleging that the manufacturer defendants were strictly liable for design defects in the smoke detector. After reviewing the essential elements of a claim sounding in strict liability, as delineated in the Restatement (Second) of Torts § 402A,[11] the court noted that "the only issue is whether the circuit court could properly determine from the allegations in the complaint that any causation attributable to the manufacturer defendants ... was superseded by the negligence of others." *Id.* at 578, 933 A.2d at 573. The intermediate appellate court stated that "an intermediary's negligent failure to prevent harm will be a superseding cause when it is 'so extraordinary as to not have been reasonably foreseeable.'" *Id.* at 580–81, 933 A.2d at 574 (citation omitted). Moreover, the crucial inquiry in determining "the effect that a factor has, in causing harm, standing alone, when there are multiple causes, is determined, not only by the nature of the particular factor, but also by whether the aggregate of the causes produce an unforeseeable result." *Id.* at 582, 933 A.2d at 575. The Court of Special Appeals held that such a determination could not be made until "the facts [are] ... gleaned from all relevant and material information." *Id.* at 582, 933 A.2d at 575.

Finally, the Court of Special Appeals reversed the judgment of the Circuit Court granting the motion to dismiss the

---

11. Section 402A of the Restatement (Second) of Torts reads as follows:
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 (2) The rule in Subsection (1) applies though
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

manufacturer defendants as to Counts V and VI in the Complaint alleging breach of express and implied warranties. The Court of Special Appeals reiterated that the motion "must be evaluated based on the pleadings alone. When matters outside of the pleadings are presented, the motion should be treated as one for summary judgment and 'all parties shall be given reasonable opportunity to present all material made pertinent.' " *Id.* at 583, 933 A.2d at 576. The Court of Special Appeals noted as follows:

"Had the court elected to consider the User's Manual, it may well have been persuaded that there was no breach of the implied warranty of fitness for a particular purpose because the instructions contained in the User's Manual ... accurately described precisely how the product would perform.... As to the more general implied warranty of merchantability, based on industry standards, a superseding cause analysis would likewise be appropriate, but only upon facts susceptible of but one inference."

*Id.* at 586–87, 933 A.2d at 577–78.

With respect to the breach of an express warranty claim, the Court of Special Appeals first noted the difference between a court's treatment of express and implied warranties: "What differentiates a promise implied by law [*i.e.*, an implied warranty,] ... and an express warranty is that the 'standard of performance is set by the defendants' promises, rather than imposed by law.' " *Id.* at 587, 933 A.2d at 578. Thus, "an express warranty [as well as an implied warranty], in essence, sounds in contract and, accordingly, is viewed from the perspective of the individual bargain." *Id.* at 588, 933 A.2d at 578. The Court of Special Appeals held that the Circuit Court could not have analyzed the breach of express warranty claim properly without examining the documents, including the smoke detector's User's Manual as well as marketing, advertisements, and sales literature, alleged to extend such warranties. *Id.* The Court of Special Appeals reversed the Circuit Court's grant of the manufacturer defendants' motion to dismiss on Counts V and VI alleging breach of express and implied warranties.

### B. Ryland Homes

The Court of Special Appeals reversed the Circuit Court's dismissal of Counts XI and XII against Ryland on the same grounds that it reversed the motion to dismiss granted to the manufacturer defendants. The Court of Special Appeals held that, in order for Ryland to succeed on its motion to dismiss, then "not only must the facts, as they relate to Ryland, admit of but one inference, but the same must be true of the acts of negligence asserted to be causes which supersede that negligence of Ryland...." *Id.* at 557, 933 A.2d at 560. Citing several examples to support its reasoning,[12] the Court of Special Appeals concluded that the Complaint was insufficient to properly determine whether the negligence of Ryland in selecting, purchasing and installing a smoke detector which did not comport with industry standards, and in failing to deliver a document that contained warnings of its limitations, was superseded by the negligence of the Lis and Chapmans.

Regarding the Circuit Court's dismissal of the count in the Complaint alleging that Ryland was strictly liable for having participated in the selection, installation, selling and placing into the stream of commerce a defective product, the Court of Special Appeals concluded that whether intervening acts of negligence constituted superseding causes could not be determined until "the facts [are] ... gleaned from all relevant and material information." *Id.* at 582, 933 A.2d at 575.

### IV. Standard of Review and Argument of the Parties

 In order to withstand a motion to dismiss for failure to state a cause of action, the plaintiff must allege facts that, if

---

12. The Court of Special Appeals stated that an "examination of the contents of the User's Manual" was required in order to determine whether Ryland's the failure to deliver the manual was "of any consequence." *Id.* at 558, 933 A.2d at 560–61. The manual could not be examined on a motion to dismiss. The Court of Special Appeals also noted that greater consideration was required, through affidavits and depositions, to determine whether "procuring and installing a product which did not meet industry standards is a substantial factor, particularly considering that it was compliant with all applicable building codes when it was installed." *Id.* at 558, 933 A.2d at 561.

proved, would entitle him or her to relief. *See Arfaa v. Martino,* 404 Md. 364, 380–81, 946 A.2d 995, 1004–05 (2008). In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, a reviewing court must "assume the truth of all well-pleaded facts and allegations in the complaint, as well as all inferences that can reasonably be drawn from them." *Id.* at 380, 946 A.2d at 1004. A dismissal is proper only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff. *Id.* at 380–81, 946 A.2d at 1005. The court must view all well-pleaded facts and the inferences from those facts in a light most favorable to the plaintiff. *Id.* at 380, 946 A.2d at 1004–05.

Before this Court, Pittway and Ryland argue that this Court should affirm the judgment of the Circuit Court because, as a matter of law, they did not proximately cause the plaintiffs' injuries. They argue that the injuries occurred because, in violation of the Gaithersburg City rental ordinances, the children were sleeping in windowless basement bedrooms that lacked emergency egress. In addition, the injuries occurred because the Lis, the landlords, had modified the original, unfinished basement, on two occasions to include windowless bedrooms, and five years after the house was built, the owners did not follow code provisions that required the installation of new, dual-powered smoke detectors outside the bedrooms. Finally, Pittway and Ryland argue that the injuries occurred because the children went to sleep, leaving lit candles, in the windowless basement rooms, without emergency egress and without adult supervision.

Petitioners assert that the Court of Special Appeals misconstrued their argument, misapplied longstanding principles of Maryland law, and confused the different components of proximate cause, in deciding the case as though they had argued the absence of causation-in-fact, which petitioners had not done, while conducting no analysis of legal causation and superseding cause, which had been the entire focus of petitioners' motions. Petitioners complain that the Court of Special Appeals improperly considered matters beyond the four corners of the Complaint in deciding the motion to dismiss. In

sum, petitioners argue that the correct legal analysis leads to the conclusion that, as the Circuit Court ruled, as a matter of law, Ryland and Pittway did not proximately cause plaintiffs' damages because they could not have reasonably foreseen, in 1989, the intervening negligent and illegal acts, when, in compliance with all applicable code provisions, they manufactured and installed a single-powered smoke detector in the unfinished basement. They ask this Court to hold that, as a matter of law, the intervening acts of others broke any chain of causation running from their alleged acts or omissions to the injuries that occurred nine years later.

Ryland concedes that the Court of Special Appeals recognized, correctly, that the issue on appeal related solely to issues of superseding causes and to the absence of causation. Ryland quotes from the appellate opinion that the court recognized the proper standard, *i.e.*, that the proper focus is only on the four corners of the Complaint. Ryland concedes also that the court enunciated the correct legal principles pertaining to proximate cause. The gravamen of Ryland's Complaint with the Court of Special Appeals opinion is that although the court articulated the guiding principles correctly, the court misapplied the correctly stated principles by failing to focus on the issue of legal causation and instead focusing on causation-in-fact, or a but for cause of plaintiffs' injuries. Ryland states in its brief the following argument:

> "But although the court seemed to grasp the correct legal principles and the correct scope of review, it proceeded to decide the case on an entirely different set of principles and to base its decision on materials well beyond 'the four corners of the complaint.' Specifically, rather than focus on the issue of legal causation—*i.e.*, the issue of whether the Lis' and Chapmans' wrongful acts were so unforeseeable as to constitute superseding causes and to break the chain running from Ryland's alleged acts or omissions—the court focused on whether the absence of a functioning smoke detector did or did not represent a cause-in-fact or but-for cause of the plaintiffs' injuries. Moreover, rather than

review the well-pleaded factual allegations of the plaintiffs' actual complaint, the court based its decision on testimony from depositions that were taken before Ryland (or the manufacturers) had even become parties to the case."

Brief of Ryland at 29.

While Pittway does not concede as readily that the Court of Special Appeals recognized the proper standard for superseding causation, it echoed Ryland's contention that the Court of Special Appeals erred in conflating cause-in-fact with legal cause. Pittway contended that the Court of Special Appeals focused on whether its negligence was a "substantial factor" in causing respondents' injuries rather than on a determination of proximate cause. Pittway stated as follows:

"[T]he doctrine of 'superseding cause relieves the actor from liability, *irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm.*' Courts must assume that the first actor's alleged negligence was a substantial cause, or cause-in-fact, of the plaintiff's injuries before even considering the question of superseding cause. While the 'substantial factor' inquiry is largely fact driven, the superseding cause analysis is legal in nature, subject to 'considerations of fairness and social policy.'

"None of the 'fact issues' identified by the Court of Special Appeals has any bearing on the superseding cause analysis. Correctly following the legal standards discussed above and for considering a motion to dismiss, the circuit court assumed that the Manufacturer Appellants' alleged negligence did, in fact, contribute to the plaintiffs' injuries. The court then applied the superseding cause analysis to determine whether the Manufacturer Appellants could not have proximately caused the injuries under the law of proximate causation. The 'fact issues' identified by the Court of Special Appeals relate exclusively to that which the circuit court properly assumed in accordance with this Court's

prior holdings, *i.e.,* that the Manufacturer Appellants' negligence was a substantial factor."

Brief of Pittway at 26–27.

## V. Analysis and Discussion

Before we proceed to an analysis of the issues before the Court, we point out that all parties' arguments are flawed. Petitioner Pittway states that "[t]he Court of Special Appeals' first basis for reversing the circuit court's ruling is that 'facts determinative' of whether the Manufacturer Appellants' negligence were a substantial factor in the plaintiffs' injuries were not sufficiently developed.... [T]he Court of Special Appeals inexplicably declared that whether the 'original negligence is a substantial factor' is somehow important in analyzing superseding causation." Brief of Pittway at 26. That is not correct. The Court of Special Appeals said that in order for a motion to dismiss to be granted, superseding causation, which is normally reserved for the trier of fact, must be determined as a matter of law. To do so, the facts alleged in the Complaint as they relate to petitioners, must "admit of but one inference, [and] the same must be true of the acts of negligence asserted to be causes which supersede that negligence of" petitioners. *Collins,* 176 Md.App. at 557, 933 A.2d at 560.

On the other hand, respondents state that the Court of Special Appeals "correctly held that the facts on superseding causation in this case at least pose a jury question, whether or not the [intermediate appellate] court erred procedurally when it considered documents outside of the Complaint." Brief of Respondents at 8. That, too, is not correct. The Court of Special Appeals did *not* state that the facts pose a jury question. The court stated that the resolution of the issues on a motion to dismiss was premature and that a more expansive review upon motions for summary judgment or on the merits is proper review. *Collins,* 176 Md.App. at 551, 933 A.2d at 557. The significant point the court made is that at the stage of the proceedings, a motion to dismiss, whether the injuries and deaths were foreseeable are susceptible of more than one inference, and were not so close to the polar extreme that the

issue of causation is rendered as a matter of law. *Id.* at 552, 933 A.2d at 557.

### A.

Legal cause and proximate cause has been widely discussed in cases and legal literature and has posed obstacles to recovery for victims for generations. *See, e.g., Ileto v. Glock, Inc.,* 349 F.3d 1191, 1208–09 (9th Cir.2003); *Board of County Commissioners v. Bell Atlantic–Maryland,* 346 Md. 160, 184, 695 A.2d 171, 183 (1997); *Hamblin v. State,* 213 Ariz. 455, 143 P.3d 388, 390–91 (Ct.App.2006); *Carrano v. Yale–New Haven Hosp.,* 279 Conn. 622, 904 A.2d 149, 172–73 (2005); *Pierre v. Allstate Ins., Co.,* 257 La. 471, 242 So.2d 821, 830 (1970); WILLIAM LLOYD PROSSER & W. PAGE KEETON, THE LAW OF TORTS § 41, at 263–64 (5th ed. 1984) W. Jonathan Cardi, *Reconstructing Foreseeability,* 46 B.C. L.REV. 921, 926–27 (2005). The principles have been set out, explored, explicated and expanded. Nonetheless, the crux of this case is not about any new statement of law, and none of the parties suggest that the principles of proximate causation lack definition or are in need of revision. Instead, petitioners' argument is that the intermediate appellate court misapplied well-established and well-recognized legal principles. For that reason, a discussion of the applicable legal principles is necessary, and we turn to the Court of Special Appeals' application of them to this case.

■■■■■■ It is a basic principle that "[n]egligence is not actionable unless it is a proximate cause of the harm alleged." *Stone v. Chicago Title Ins.,* 330 Md. 329, 337, 624 A.2d 496, 500 (1993). Proximate cause "involves a conclusion that someone will be held legally responsible for the consequences of an act or omission." *Peterson v. Underwood,* 258 Md. 9, 16, 264 A.2d 851, 855 (1970). To be a proximate cause for an injury, "the negligence must be 1) a cause in fact, and 2) a legally cognizable cause." *Hartford Ins. Co. v. Manor Inn,* 335 Md. 135, 156–57, 642 A.2d 219, 230 (1994). In other words, before liability may be imposed upon an actor, we require a certain relationship between the defendant's conduct and the plain-

tiff's injuries. The first step in the analysis to define that relationship is an examination of causation-in-fact to determine who or what caused an action. The second step is a legal analysis to determine who should pay for the harmful consequences of such an action.

Causation-in-fact concerns the threshold inquiry of "whether defendant's conduct actually produced an injury." *Peterson,* 258 Md. at 16–17, 264 A.2d at 855. Two tests have developed to determine if causation-in-fact exists, the but for test and the substantial factor test. *See id.* at 16, 264 A.2d at 855; *Yonce v. SmithKline Beecham Clinical Labs.,* 111 Md. App. 124, 138, 680 A.2d 569, 575 (1996), *cert. denied,* 344 Md. 118, 685 A.2d 452 (1996); *Bartholomee v. Casey,* 103 Md.App. 34, 56–57, 651 A.2d 908, 918–19 (1994), *cert. denied,* 338 Md. 557, 659 A.2d 1293 (1995). The "but for" test applies in cases where only one negligent act is at issue; cause-in-fact is found when the injury would not have occurred absent or "but for" the defendant's negligent act. *Peterson,* 258 Md. at 16, 264 A.2d at 855; *see also Sindler v. Litman,* 166 Md.App. 90, 113, 887 A.2d 97, 110 (2005).

When two or more independent negligent acts bring about an injury, however, the substantial factor test controls. Causation-in-fact may be found if it is "more likely than not" that the defendant's conduct was a substantial factor in producing the plaintiff's injuries. *See Reed v. Campagnolo,* 332 Md. 226, 240, 630 A.2d 1145, 1152 (1993) (recognizing and applying the factors); *Eagle–Picher v. Balbos,* 326 Md. 179, 208, 604 A.2d 445, 459 (1992). This Court has adopted the substantial factor test set forth in the Restatement (Second) of Torts. *Eagle–Picher,* 326 Md. at 208–09, 604 A.2d at 459. Section 431 of the Restatement (Second) of Torts reads as follows:

"The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

Section 433 of the Restatement (Second) of Torts provides:

"The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces of which the actor is not responsible;

(c) lapse of time."

Once causation-in-fact is established, as in the case *sub judice*, the proximate cause inquiry turns to whether the defendant's negligent actions constitute a legally cognizable cause of the complainant's injuries.[13] This part of the causation analysis requires us to consider whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected. *Stone*, 330 Md. at 337, 624 A.2d at 500. Legal causation is a policy-oriented doctrine designed to be a method for limiting liability after cause-in-fact has been established.[14] *See* Prosser & Keeton, § 42, at

---

**13.** We acknowledge that the distinction between causation-in-fact and legal causation is not always a simple one. Prosser & Keeton, § 42, at 272–73. Nevertheless, because petitioners do not dispute that their negligent conduct was a cause-in-fact of respondents' injuries, we need only focus on whether petitioners' conduct was a legal cause of respondents' injuries.

**14.** Professor Kenneth Vinson aptly describes the distinction between cause-in-fact and legal cause as follows:

"In the trial of tort cases, the two faces of causation unduly complicate keeping separate the *is* and the *ought*. For example, it's one

273 ("Legal causation" depends "essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred"); Rory A. Valas, *Toxic Palsgraf: Proving Causation When the Link Between Conduct and Injury Appears Highly Extraordinary,* 18 B.C. ENVTL. AFF. L.REV. 773, 782 (1991) ("Courts have developed the legal doctrine of proximate cause to evaluate the varied causes-in-fact of an event and incorporate policy considerations into liability determinations"); W. Page Keeton, *Causation,* 28 S. TEX. L.J. 231, 232 (1986) ("Factual causation refers to the requirement that the act and the injury be related. Legal causation refers to the requirement that the act and the injury be *reasonably* related"). The question of legal causation most often involves a determination of whether the injuries were a foreseeable result of the negligent conduct. Other public policy considerations that may play a role in determining legal causation include "the remoteness of the injury from the negligence [and] the extent to which the injury is out of proportion to the negligent party's culpability...." Valas, 18 B.C. ENVTL. AFF. L.REV. at 782 n. 66.

 Writing for the Court in *Henley v. Prince George's County,* Judge McAuliffe discussed the test of foreseeability and the policy consideration as follows:

> "In applying the test of foreseeability ... it is well to keep in mind that it is simply intended to reflect current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm, and to avoid the attachment of liability where, in the language of Section 435(2) of the Restatement (Second) of Torts (1965), it ap-

---

> kind of job to trace empirically the history of this planet's pollution (cause in fact) back to the ape who crawled down a tree, urinated in a stream, and first began upsetting nature's balance. It's quite another job to select, among a jungle of contributing factors, which polluting apes deserve fine or jail for contaminating Mother Earth."

Kenneth Vinson, *Proximate Cause Should Be Barred From Wandering Outside Negligence Law,* 13 FLA. ST. U.L.REV. 215, 215–16 (1985) (emphasis in original).

pears 'highly extraordinary' that the negligent conduct should have brought about the harm."

*Henley v. Prince George's County,* 305 Md. 320, 334, 503 A.2d 1333, 1340 (1986). The defendant may not be liable if it appears highly extraordinary and unforeseeable that the plaintiffs' injuries occurred as a result of the defendants' alleged tortious conduct. The Restatement (Second) of Torts sets out that rule in § 435(2), stating as follows:

"The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."

Comment c to that section explains as follows:

"Where it appears to the court in retrospect that it is highly extraordinary that an intervening cause has come into operation, the court may declare such a force to be a superseding cause. Analytically, the highly extraordinary nature of the result which has followed from the actor's conduct (with or without the aid of an intervening force) indicates that the hazard which brought about or assisted in bringing about that result was not among the hazards with respect to which the conduct was negligent. Strictly, the problem before the court is one of determining whether the duty imposed on the actor was designed to protect the one harmed from the risk of harm from hazard in question. However, courts frequently treat such problems as problems of causation."

(citations omitted).

When multiple negligent acts or omissions are deemed a cause-in-fact of a plaintiff's injuries, the foreseeability analysis must involve an inquiry into whether a negligent defendant is relieved from liability by intervening negligent acts or omissions. Our predecessors addressed the issue of intervening negligent acts in *Penn. Steel Co. v. Wilkinson,* 107 Md. 574, 69 A. 412 (1908). In that case, a defendant bridge-builder was held liable for negligently allowing a rope to hang in a loop very low across a public street, even though the

immediate cause of the injury suffered by the plaintiff's horse was the displacement of the rope by a stranger. *Id.* at 580, 69 A. 412–13. The Court noted the following:

"[T]he defendant is liable where the intervening causes, acts, or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act, or omission, or even it is generally held, if the intervening acts or conditions were of a nature, the happening of which was reasonably to have been anticipated, though they have been acts of the plaintiff himself."

*Id.* at 581, 69 A. at 414–15. Liability is avoided only if the intervening negligent act or omission at issue is considered a superseding cause of the harm to the plaintiffs.

Section 442 of the Restatement (Second) of Torts, which reads as follows, establishes the test that has been applied in Maryland courts for determining when an intervening negligent act rises to the level of a superseding cause:

"(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion."

*See, e.g., Sindler*, 166 Md.App. at 116–17, 887 A.2d at 112; *Banks v. Iron Hustler Corp.*, 59 Md.App. 408, 430–31, 475 A.2d 1243, 1254 (1984). Section 447 of the Restatement (Second) of Torts further qualifies this test:

> "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
>
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Thus, a superseding cause arises primarily when "unusual" and "extraordinary" independent intervening negligent acts occur that could not have been anticipated by the original tortfeasor. *McGowans v. Howard*, 234 Md. 134, 138, 197 A.2d 915, 918 (1964).[15]

This Court has examined whether a superseding cause existed under numerous factual circumstances. In *Atlantic Mutual v. Kenney*, 323 Md. 116, 132, 591 A.2d 507, 515 (1991), petitioner and his insurance carrier sued to recover property damages resulting from a vehicle collision. They filed a suit against the operator and owner of a tractor trailer that was negligently parked on the roadway so as to significantly interfere with the ability of drivers on opposing ends of the tractor trailer to observe the approach of the other. *Id.* at 119, 591 A.2d at 508. We rejected respondent's argument that his negligence in parking his tractor trailer so as to obstruct

---

**15.** Another factor in the superseding cause analysis, which is not relevant to the case *sub judice,* is whether criminal acts of a third person occurred after the tortfeasor's original act of negligence. *See Henley,* 305 Md. at 336, 503 A.2d at 1341.

the view of drivers on the roadway was superseded by the negligence of the drivers who collided with each other. We reasoned as follows:

"If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another."

*Id.* at 131, 591 A.2d at 514. We noted that, pursuant to § 435 of the Restatement (Second) of Torts, a negligent actor's conduct may be held not to be a legal cause of harm to another where an intervening negligent event "appears to the court highly extraordinary that it should have brought about the harm." *Id.* at 129–30, 591 A.2d at 513–14. Similarly, § 447 of the Restatement (Second) of Torts, establishes that an intervening third person's negligence is not a superseding cause of harm to another when the original tortfeasor should have realized that the third person might so act, when the act of the third person was not considered "highly extraordinary" or when the intervening act is a normal consequence of a situation created by the original tortfeasor's conduct. *Id.* at 131–32, 591 A.2d at 514. Applying these principles, we concluded that the risk that a driver would fail to exercise sufficient caution in moving around the tractor trailer to enter the roadway, and thereby collide with another vehicle on the roadway, was a reasonably foreseeable result of respondent's negligence in parking his tractor trailer so as to significantly obstruct the vision of drivers, and that respondent's actions were therefore the proximate cause of petitioner's injuries.

Applying the same principles underlying superseding causation set forth in *Kenney,* we held in *Manor Inn,* 335 Md. at 160, 642 A.2d at 231–32, that a third person's intervening negligent act was highly extraordinary and therefore relieved the original tortfeasor of liability. In *Manor Inn,* an escaped patient from a State-operated hospital for the mentally ill stole a van that had been left unattended, with the keys in the ignition, and, while driving the van, struck another automobile, causing personal injury and property damage. *Id.* at 138–39, 642 A.2d at 221. Petitioner, the insurance carrier for the driver of the automobile struck by the van driven by the eloped patient, sued Manor Inn on the grounds that its employee's negligence in leaving the van unattended with the keys in the ignition caused the subsequent collision. Notably, *Manor Inn* was a review of a summary judgment, which we affirmed. We reasoned that "[t]o be liable for the injuries to the petitioner's insured, it must be proved that Manor Inn's negligence was a proximate cause of the accident." *Id.* at 154, 642 A.2d at 229. Applying the same standard as in *Kenney,* we concluded the following:

"In the case *sub judice,* but for the negligence of Manor Inn, [the patient] would not have taken the van. It is not so clear, however, that the thief would drive negligently, and even more unclear that, in doing so, he or she would injure the plaintiff. Consequently, while the negligence of Manor Inn clearly was the proximate cause of the theft of the van, it does not follow that that causal relationship continued from the moment of the theft to the moment of the impact between the van and Wewer's car. [The patient's] conduct in taking the van was not 'highly extraordinary'; indeed, it was highly predictable. On the other hand, the manner in which he drove the van, and its consequences, were 'highly extraordinary.'"

*Id.* at 160, 642 A.2d at 231–32.

In the case *sub judice,* the Court of Special Appeals was correct in recognizing the well-settled principles applied in this State with respect to superseding cause. In reaching its decision, the intermediate appellate court relied on the factors

enumerated in § 442 of the Restatement (Second) of Torts, and properly considered both the foreseeability of the harm suffered by respondents as well as the foreseeability of the intervening acts that took place between petitioners' manufacturing and installation of the single-powered smoke detector and the fire that took place in the Chapman's home. *See Collins,* 176 Md.App. at 549, 557, 933 A.2d at 555, 560.

The intermediate court did, at times, conflate the substantial factor test with whether the injuries and deaths were foreseeable; *i.e.,* when it noted "that the facts determinative of whether the negligent acts of the manufacturer defendants, Ryland and Summit are substantial factors in causing the deaths and injuries and, hence, that such injuries and deaths were foreseeable, are susceptible of more than one inference." *Id.* at 552, 933 A.2d at 557. The court intertwined cause-in-fact analysis with legal causation analysis. Nevertheless, this confusion of causation-in-fact, which is determined based on the substantial factor test, with legal causation, which is grounded in foreseeability, did not impair the Court of Special Appeals' conclusion that the principal determination for the trial court was to determine, as a matter of law, whether respondents' deaths and injuries were a foreseeable consequence of petitioners' negligence, or, whether superseding causes existed—again, only as a matter of law—to relieve petitioners of liability and thus warrant the granting of a motion to dismiss. The intermediate court set forth the proper framework for making a determination of superseding cause.

Petitioners assert that the foreseeability of the intervening act, not the foreseeability of the harm to the plaintiff, controls in the superseding cause analysis. They argue that foreseeability is controlled, for example, by the likelihood of a building permit violation or that the basement would be illegally modified to include sleeping rooms, rather than the probability that fatalities and injuries would result from a fire in the home. We disagree. Contrary to petitioners' assertion, this Court does not limit the superseding cause analysis to a

consideration of either the foreseeability of the harm suffered by the plaintiffs or the foreseeability of the intervening acts in its approach to determining superseding causation. *See Horridge v. St. Mary's County Dep't of Social Services*, 382 Md. 170, 193–95, 854 A.2d 1232, 1245–46 (2004); *Henley*, 305 Md. at 336–37, 503 A.2d at 1342; RESTATEMENT (SECOND) OF TORTS § 442 (1965). Rather, we consider *both* the foreseeability of the harm suffered by the plaintiffs as well as the foreseeability of intervening acts in determining superseding causation. *Horridge*, 382 Md. at 193–95, 854 A.2d at 1245–46; *Henley*, 305 Md. at 336–37, 503 A.2d at 1341–42; RESTATEMENT (SECOND) OF TORTS § 442.

While proximate cause—both cause-in-fact and legal cause—analysis is reserved for the trier of fact "it becomes a question of law in cases where reasoning minds cannot differ." *Segerman v. Jones*, 256 Md. 109, 135, 259 A.2d 794, 806 (1969). It is well established that, "unless the facts admit of but one inference . . . the determination of proximate cause . . . is for the jury." *Caroline v. Reicher*, 269 Md. 125, 133, 304 A.2d 831, 835 (1973).

## B.

Having reviewed the principles of proximate causation, we turn now to the Court of Special Appeals' holding reversing the Circuit Court's dismissal of the claims against Pittway. The essence of the Court of Special Appeals' conclusion with respect to Pittway was that the facts alleged in the Complaint admit of more than one inference, making it improper to determine—on a motion to dismiss—whether intervening negligent acts or omissions were highly extraordinary and, hence, superseding causes of respondents' injuries. *Collins*, 176 Md.App. at 534, 538, 545, 547, 552, 933 A.2d at 546, 549, 553, 554, 557.[16] We agree.

---

16. The Court of Special Appeals noted that superseding cause analysis applies to strict liability and breach of implied warranty claims as well as negligence and, therefore, its conclusion that the facts admit of

On its face, the Complaint leads to different, and contrary, inferences. On the one hand, the facts alleged in the Complaint suggest that the deaths and injuries that resulted from the fire were the *ordinary* and *foreseeable* result of a defective smoke detector. It was foreseeable from the time that a smoke detector was manufactured that a candle, left lit, would cause a fire; that a basement lacking adequate egress might be used for sleeping, and that injuries and deaths could result if the smoke detector did not alert anyone sleeping before the smoke and flames are too great to overcome.

On the other hand, the facts set forth in the Complaint could suggest that the deaths and injuries suffered by respondents were *extraordinary*. The confluence of events that led to the children's deaths and injuries represented a perfect storm that developed over a period of nearly ten years. All of the various acts of negligence described in the Complaint can be considered causes-in-fact of the injuries—and petitioners concede that their negligent acts and omissions qualified as such for the purpose of the motion to dismiss—but given the time period over which the events took place, as well as the actual events the night of the fire, there is a permissible inference that the manufacturer of a single-powered smoke detector could not reasonably be held liable for the ultimate harm.

 The Court of Special Appeals held that a motion for summary judgment or a trial on the merits would have "subjected to scrutiny" the alleged events surrounding Keith Chapman's failure to extinguish the candle, *see id.* at 551, 933 A.2d at 556–57. The Court of Special Appeals also referred to the time when the boys tried unsuccessfully to escape from the room after the fire had started as a fact that required additional examination on a motion for summary judgment or a trial on the merits. *Id.* at 549, 933 A.2d at 555. While the intermediate appellate court referred to deposition testimony improperly in describing the time period after the boys awak-

---

multiple inferences applied equally to those counts in the Complaint alleging strict liability and breach of implied warranties.

ened to the basement fire, *see id.* at 548, 933 A.2d at 555, even without considering the depositions, a reasonable inference of the facts alleged in the Complaint is that because the smoke detector did not go off, the children may have had less time to escape the fire than they otherwise would have. Count IV of the Complaint alleging Pittway's negligence states as follows:

"60. That the Manufacturer Defendants breached their duty of care for reasons including, but not limited to, the following:

a. carelessly and unreasonably developing, planning, designing, and supervising the manufacture and distribution of the smoke/fire detector without a battery back-up or alternative safety power source.

\* \* \*

61. As direct and approximate result of the Manufacturer Defendants' aforestated negligence, the smoke/fire detector at issue did not operate in times of electrical outage, and in particular on June 14, 1998, and thus the smoke/fire detector did not sound and warn the Plaintiffs as to the existence of the fire.

62. That as a direct and proximate [cause] of the Defendants acts, omissions, and breaches of duty, the Plaintiffs ... did not have a reasonable opportunity to and could not escape the burning residence."

Count III of the Complaint alleging strict liability recites a similar allegation.[17]

"54.... [T]he failure to equip the detector at issue with a technologically and economically feasible safety device,

---

[17]. Petitioners do not challenge the Court of Special Appeals' conclusion that the concept of superseding causation is always relevant to a products liability case on the grounds that a plaintiff must prove a causal relationship between the product defect and the injury. *Id.* at 580, 933 A.2d at 574. We agree with the Court of Special Appeals that proximate cause analysis is equally applicable to the product liability claims set forth in the Complaint. As we have noted, proximate cause is a necessary element of product liability:

" '[P]roduct liability cases are based upon theories of negligence, breach of warranty and strict liability, or a combination of these

namely a battery back-up or other alternative safety power source, and the failure to advise and warn of such, caused said detector to be in an unreasonably dangerous condition to the Plaintiffs and foreseeable users, and created an unreasonable risk of injury ...

55. That as a direct and proximate [cause] of the Defendants acts, omissions, and breaches of duty, the Plaintiffs ... did not have a reasonable opportunity to and could not escape the burning residence."

The opportunity that the children had to escape should be examined more fully in order to assess the "extent of the effect" of intervening acts of negligence on the ultimate harm, as required by comment (a) to Restatement (Second) § 435(2), and whether those intervening acts superseded the negligence of the manufacturer defendants. This examination should be done after consideration of any motion for summary judgment or a trial on the merits, by affording the court an opportunity to consider facts beyond the four corners of the complaint, and to consider depositions, affidavits or witness testimony.

■■■ The Complaint alleged in Count IV that the manufacturer defendants, including Pittway, failed "to provide users with adequate warnings and/or information concerning the known limitations of the detector." While, "[i]t is undisputed that the manufacturer defendants delivered the User's Manual to Summit and/or Ryland, alerting the ultimate purchaser, when it was installed, that the smoke detector would not operate during the power outage," *Collins*, 176 Md.App. at

---

theories' and that '[w]hile each theory is distinct, a brief examination of each will show that they all require proof that the product was defective when it left the hands of the manufacturer, and that the defective condition was the proximate cause of the injuries or damages of which the plaintiff complains.' "
*Ford v. General Accident*, 365 Md. 321, 335, 779 A.2d 362, 370 (2001). "In determining what is contemplated by the foreseeability requirement in products liability cases, we obtain guidance from the many Maryland cases which dealt with this same concept in the general negligence context." *Moran v. Faberge, Inc.*, 273 Md. 538, 550, 332 A.2d 11, 19 (1975).

546–47, 933 A.2d at 554, consideration of the User's Manual is important in determining whether Pittway breached implied or express warranties. Count V in the Complaint alleging breach of implied warranty of merchantability and of fitness for a particular purpose states as follows:

"64. That the Manufacturer Defendants had a duty of implied warranty of merchantability pursuant to the Commercial Law Article of the Annotated Code of Maryland Sections 2–314 and 2–315, wherein the Manufacturer Defendants impliedly warranted to the public that their product(s), and in particular the smoke/fire detector at issue, was fit for the intended purpose or use for which the product was intended and made available for sale, namely the early detection and alert of smoke and/or fires.

65. That by failing to equip the model/unit with a battery or alternative safety power supply, the Manufacturer Defendants breached said implied warranty(ies) . . . by failing to provide a product free from design and/or manufacturing defects . . . ."

Regarding the breach of express warranty, the Complaint provided as follows in Count VI:

"69. The Manufacturer Defendants and their agents . . . expressly warranted via their marketing, advertisements, warranties, sales literature, owners manuals, and other representations that their product(s) and in particular the smoke/fire detector at issue was fit for the purpose of it was intended, namely the detection and advance warning of smoke and/or fires.

70. That by failing to equip the model/unit with a battery or alternative safety power supply, the Manufacturer Defendants breached said express warranties . . . ."

The implied and express warranty claims hinge on what, if anything, Pittway represented about the smoke detector. Without examining the User's Manual, as well as marketing and promotional literature and any other documents that Pittway published in order to market the smoke detector to the public, the Circuit Court could not properly consider the net effect of intervening negligent acts in a determination of

superseding cause.[18] As such, under the circumstances presented herein, a motion to dismiss should not have been granted.[19]

## C.

 Turning next to the Court of Special Appeals' decision with respect to Ryland, we agree with the Court of Special Appeals that the Circuit Court erred in granting Ryland's motion to dismiss. The crux of the allegations against Ryland involve its failure to deliver the User's Manual to the Lis. The Complaint states as follows:

"97. Defendant Ryland Group failed to provide the Lis, as the original purchasers of the subject home, with the in-

18. As with the strict liability claim, petitioners do not directly challenge the Court of Special Appeals' presumption that proximate cause analysis is a component of a breach of implied or express warranty claim. *Id.* at 586–88, 933 A.2d at 577–79. We agree that the principles underlying proximate cause as they relate to a negligence claim also apply to claims for breach of warranty. *See Lloyd v. GM*, 397 Md. 108, 160, 916 A.2d 257, 287 (2007) ("[A] plaintiff must plead, under a theory of breach of implied warranty, that the seller's breach was the proximate cause of injury . . ."); *Ford*, 365 Md. at 334–35, 779 A.2d at 370– 71; *see also Heil v. Standard Chemical Mfg. Co.*, 301 Minn. 315, 223 N.W.2d 37, 42 (1974) ("In an action based on breach of warranty, it is necessary to show that the breach of warranty was the proximate cause of the loss sustained."); *Schmaltz v. Nissen*, 431 N.W.2d 657, 660–61 (S.D.1988) ("In order to recover money damages for a breach of express warranty one must prove . . . that such failure to comply was a proximate cause of the financial injury . . ."). A successful claim for breach of implied or express warranty must prove that the breach of warranty was the proximate cause of the injuries or damages of which the plaintiff complains. *See Lloyd*, 397 Md. at 160, 916 A.2d at 287; *Ford*, 365 Md. at 334–35, 779 A.2d at 370–71.

19. Our research has revealed that no case in the country involving a complicated, superseding or intervening cause defense, based on the same or similar allegations regarding fire detectors with a single energy source, has prevailed on a motion to dismiss. Regardless of which side has prevailed, the earliest that any case has countenanced such a defense being dispositively ruled upon has been at summary judgment. *See, e.g., Hackert v. First Alert*, 2005 WL 6021858, 2005 U.S. Dist. LEXIS 46141 (N.D.N.Y.2005); *Werner v. Pittway*, 90 F.Supp.2d 1018 (W.D.Wis.2000); *Redden v. Comer*, 200 W.Va. 209, 488 S.E.2d 484 (1997); *McNamara v. Balsiger*, 260 Wis.2d 602, 658 N.W.2d 88 (Wis.Ct. App.2003).

structional materials and/or packaging for the smoke detectors installed in the home.

\* \* \*

99. On information and belief, these instructional materials and/or packaging contained critical safety information, including but not limited to the fact that the smoke detectors would not function during a power outage.

100. As a result of Defendant Ryland Group's negligence in failing to provide this critical fire safety information, neither the Lis nor their tenants, Michael and Catherine Chapman, knew that the smoke detectors would not function during a power outage.

101. If this critical fire safety information had been provided, the Chapmans would not have permitted their children and Plaintiffs' children to use candles in the basement during the power outage or the Chapmans would have taken the candles away from the children before the Chapmans retired to bed or would have taken similar safety precautions; and Plaintiffs' children would not have perished or been otherwise injured in the June 14, 1998 house fire."

We agree with the Court of Special Appeals that, "although the fact of the warning can be discerned from the complaint, resort to examination of the actual User's Manual is required to determine the explicitness of the language therein." *Collins,* 176 Md.App. at 547, 933 A.2d at 554. Without the User's Manual, the Circuit Court could not have determined, as a matter of law, the "extent of the effect" that intervening negligent acts had in producing the harm to respondents, as required by the superseding cause analysis of Restatement (Second) of Torts, § 435(2).

Our reasoning applies as well to Count XII in the Complaint, alleging that Ryland was strictly liable for failing to warn respondents of the lack of a battery back-up for the smoke detector.[20] Without examining the User's Manual, the

**20.** It may well be that after consideration of the motions for summary judgment, the court will conclude that there was a superseding cause or

Circuit Court could not properly consider the net effect of intervening negligent acts in a determination of superseding cause. As such, a motion to dismiss should not have been granted.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.*

other bar to one or more of the plaintiffs' claims. Those issues are not before us and we express no view.